JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Nautilus Insurance Company

### DEFENDANTS

HCV 121 S. Broad, LLC, Marquis & Co., LLC t/a HipCityVeg, Marquis HCV Holdings, LLC, ADR North American, L.P., SSH Management, LLC, Jimmy Lee Williams and Davida Williams

**(b)** County of Residence of First Listed Plaintiff  Maricopa, AZ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Philadelphia, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Louis E. Bricklin and Sarah E. Crossl, Bennett, Bricklin & Saltzburg LLC, 1601 Market Street, 16th Floor, Philadelphia, PA 19103; 215-561-4300

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
       Plaintiff

☐ 3  Federal Question
       *(U.S. Government Not a Party)*

☐ 2  U.S. Government
       Defendant

☒ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     Another District
     *(specify)*

☐ 6 Multidistrict
     Litigation -
     Transfer

☐ 8 Multidistrict
     Litigation -
     Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Suit for Declaratory Judgment, 28 U.S.C. § 2201 et seq.

Brief description of cause:
Suit requesting declaration of coverage obligations

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE                                    DOCKET NUMBER

DATE
01/07/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

APPENDIX I

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY | : CIVIL ACTION |
| v. | : |
| HCV 121 S. BROAD, LLC, et al. | : NO: |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                    ( )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits                    ( )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                    ( )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)                    ( )

(f)  Standard Management – Cases that do not fall into any one of the other tracks.       ( X )

| __1/7/19__ | Louis E. Bricklin | Nautilus Insurance Company |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |

4849-1006-8063, v. 1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ **7233 E. Burtherus Drive, Scottsdale, AZ 85260** _____

Address of Defendant: 127 S. 18th Street, 2nd Floor, Phila., PA 19103; 1845 Walnut Street, Suite 2200, Phila., PA 19103. 123 S. Broad St., Suite 850, Phila., PA 19106, 2065 Granite St., Phila., PA 19124

Place of Accident, Incident or Transaction: _____ **June 16, 2016** _____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☐

I certify that, to my knowledge, the within case ☐ **is** / ☒ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _1/4/2019_   _(signature)_   _20281_
　　　　　　　　　　　　　*Attorney-at-Law / Pro Se Plaintiff*　　　　　*Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**　*Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
   *(Please specify):* _____

**B.**　*Diversity Jurisdiction Cases:*

- ☑ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, **Louis E. Bricklin** _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☑ Relief other than monetary damages is sought.

DATE: **01/07/2019**   _(signature)_   **20281**
　　　　　　　　　　　*Attorney-at-Law / Pro Se Plaintiff*　　　　　*Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY | : | |
| 7233 E. Butherus Drive | : | |
| Scottsdale, AZ 85260 | : | |
| v. | : | |
| HCV 121 S. BROAD, LLC | : | |
| 127 S. 18th Street, 2nd Floor | : | |
| Philadelphia, PA 19103 | : | |
| and | : | |
| MARQUIS & CO., LLC | : | |
| t/a HIPCITYVEG | : | CIVIL ACTION |
| 127 S. 18th Street, 2nd Floor | : | |
| Philadelphia, PA 19103 | : | |
| and | : | |
| MARQUIS HCV HOLDINGS, LLC | : | NO. |
| 127 S. 18th Street, 2nd Floor | : | |
| Philadelphia, PA 19103 | : | |
| and | : | |
| ADR NORTH AMERICAN, L.P. | : | |
| 1845 Walnut Street, Suite 2200 | : | |
| Philadelphia, PA 19103 | : | |
| and | : | |
| SSH MANAGEMENT, LLC | : | |
| 123 S. Broad Street, Suite 850 | : | |
| Philadelphia, PA 19106 | : | |
| and | : | |
| JIMMY LEE WILLIAMS | : | |
| 2065 Granite Street | : | |
| Philadelphia, PA 19124 | : | |
| and | : | |
| DAVIDA WILLIAMS | : | |
| 2065 Granite Street | : | |
| Philadelphia, PA 19124 | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Nautilus Insurance Company, ("Nautilus"),  through the undersigned counsel hereby requests this court to enter a declaratory judgment  in its favor and in support thereof avers as follows:

1.      This is an action seeking declaratory judgments to resolve disputes over insurance coverage with respect to whether Nautilus is obligated to defend or indemnify HCV 121 S. Broad, LLC, Marquis & Co., LLC t/a HipCityVeg, Marquis HCV Holdings, LLC, ADR North American, L.P. and SSH Management, LLC in  three related lawsuits currently pending in the Philadelphia County Court of Common Pleas bearing the captions Jimmy Lee Williams and Davida Williams v. ADR North American L.P., et al, No. 180200624; Jimmy Lee Williams v. HCV 121 S. Broad, LLC, et al., No. 180601162; and Jimmy Lee Williams v. SSH Management, LLC, No. 180601356, (the "underlying actions). A true and correct copy of the plaintiffs' second amended complaint in the first underlying action and the plaintiff's complaints in the second and third underlying actions are attached hereto and marked as Exhibits "A", "B" and "C" respectively.

2.      In the underlying actions, Nautilus currently is providing a defense under a reservation of rights to HCV 121 S. Broad, LLC, Marquis & Co., LLC, t/a HipCityVeg and Marquis HCV Holdings, LLC under Nautilus Policy No. NN687620, (the "policy").  A true and correct copy of the policy is attached hereto and marked as Exhibit "D".  In addition, Nautilus has been requested to provide a defense to ADR North American, L.P. and SSH Management, LLC in the underlying actions but has declined to do so for the reasons set forth hereafter. Jimmy Lee Williams and Davida Williams are plaintiffs in one or more of the underlying

actions.

3.     In this action, Nautilus seeks a declaration that certain provisions of the policy exclude any obligation on Nautilus's part to defend or indemnify either the parties it currently is defending in the underlying actions or the parties in the underlying actions which have tendered their defenses to Nautilus. If such declaration is granted, it will also permit Nautilus to withdraw from the defenses it has thus far provided.

## JURISDICTION

4.     This court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the citizenship of the parties  is diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.     Nautilus is incorporated in Arizona.  It is an approved surplus lines insurance company in Pennsylvania and its policies are sold in Pennsylvania.  Nautilus has its principal place of business at 7233 E. Butherus Drive, Scottsdale, AZ.

6.     Defendant, HCV 121 S. Broad, LLC, is a Pennsylvania Limited liability company registered to do business in the Commonwealth of  Pennsylvania. Upon information and belief, no member of the company is a citizen of the state of Arizona.

7.     Defendant, Marquis & Co., LLC, t/a HipCityVeg is a Pennsylvania Limited liability company with principal offices located at 127  S. 18th Street, Philadelphia, PA 19103. . Upon information and belief, no member of the company is a citizen of the state of Arizona.

8.     Defendant, Marquis HCV Holdings, LLC, is a Delaware Limited liability company with a registered agent for service of process at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  Upon information and belief, no member of the Limited liability company is a citizen of the state of Arizona.

3

9.      Defendant, ADR North American, LP is a Pennsylvania Limited Partnership with offices located at 1845 Walnut Street, Suite 2200, Philadelphia, PA 19103.  Upon information and belief, no partner in the partnership is a citizen of the state of Arizona.

10.     Defendant, SSH Management, LLC, is a Pennsylvania company with its principal office located at 123 S.  Broad Street, Suite 850, Philadelphia, PA 19106.   Upon information and belief, no member of the company is a citizen of the state of Arizona.

11.     Defendants, Jimmy Lee Williams and Davida Williams, are citizens of the Commonwealth of Pennsylvania.

12.     The amount in controversy exceeds $75,000.   Resolution of this declaratory judgment action will determine Nautilus's responsibility to defend or   indemnify various defendants in the actions brought by Jimmy Lee Williams and Davida Williams in which actions Jimmy Lee Williams alleges that as a result of the negligence of various defendants he sustained a severe electrical shock and fell approximately 8 feet from his work place sustaining catastrophic injuries including, he alleges, electrical  injury to the left upper and lower extremity, cervical and lumbar spine, neuropathy in the left upper and lower extremity, posterior cruciate ligament tear and arthritic and vascular changes.  Were it to be determined that Nautilus owed coverage for these claims the damages sought by Jimmy Lee Williams and Davida Williams  are alleged to exceed $75,000 and, in addition, Nautilus would be responsible for paying attorney's fees to counsel retained by it to defend the Williams's lawsuits. Thus the amount of those legal fees are part of the amount in controversy.

### COUNT I – DECLARATORY JUDGMENT WITH RESPECT TO HCV 121 S. BROAD, LLC, MARQUIS & CO., LLC AND MARQUIS HOLDINGS, LLC

13.     Nautilus incorporates herein by reference the averments of the preceding

4

paragraphs of this complaint for declaratory judgment as though same were here set forth at length.

14.     According to the second amended complaint filed by Jimmy Lee Williams and Davida Williams in underlying action No. 180200624, Jimmy Lee Williams sustained his injuries on June 16, 2016, while employed by Pantano & Sons, Inc. , ("Pantano"), a demolition contractor which was involved in the renovation of premises located at 121 S. Broad Street in Philadelphia, Pennsylvania.   Second Amended complaint, ¶ 22.

15.     The complaint further alleges that the premises were being renovated to permit occupancy by HipCityVeg. Second Amended complaint, ¶ 11.

16.     The second amended complaint does not identify the entity doing business as HipCityVeg which name, upon information and belief, is a fictitious name. Further upon information and belief, Nautilus avers that the business entity on behalf of which the renovations were being performed was defendant, HCV 121 S. Broad, LLC. That limited liability company is an insured under the policy.  In the alternative, if it is determined that defendants Marquis & Co., LLC or defendant Marquis HCV Holdings, LLC is the entity on behalf of which renovations were being performed as alleged in the second amended complaint then Nautilus seeks a declaration that it has no obligation to defend or indemnify those companies either.

17.     Paragraph 14 of the second amended complaint alleges that "sometime prior to June 16, 2016, defendant HipCityVeg engaged defendant [McHenry Project Consultants, LLC], as developer, for the renovation of the premises for defendant HipCityVeg's occupancy."

18.     The second amended complaint further alleges in paragraph 18 that "on or about June 7, 2016, defendant McHenry engaged Pantano & Sons, Inc. . . . as demolition contractor, for the renovation of the premises for defendant HipCityVeg's occupancy."

5

19.    The policy issued by Nautilus contains the following relevant provisions:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY
DAMAGE LIABILITY**

**1.    Insuring Agreement**

   **a.**    We will pay  those sums that the insured becomes
   legally obligated to pay as damages because of "bodily
   injury" . . . to which this insurance applies. We will
   have the right and duty to defend the insured against
   any "suit" seeking those damages. However, we will
   have no duty to defend the insured against any "suit"
   seeking damages for "bodily injury" … to which this
   insurance does not apply.

                    . . . .

   **b.**    This insurance applies to "bodily injury" . . . only if:

      **(1)**    The "bodily injury" . . .  is caused by an
      "occurrence" that takes place in the "coverage
      territory";

      **(2)**    The "bodily injury" . . . occurs during the policy
      period; . . . .

Nautilus does not dispute that the underlying action allege an occurrence resulting in bodily injury
which occurred during the policy period.  However, the policy contains the following exclusion:

**EXCLUSION – INJURY TO EMPLOYEES, CONTRACTORS,
VOLUNTEERS AND OTHER WORKERS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**    Exclusion **e. Employer's Liability** of **2. Exclusions** of **Section I – Coverage A – Bodily
Injury and Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

**e.    Injury to Employees, Contractors, Volunteers and Other Workers**

6

"Bodily Injury" to:

**(1)**   "Employees, "leased workers", "temporary workers, "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or

**(2)**   Any insured's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors

arising out of and in the course of:

**(a)**   Employment by any insured; or

**(b)**   Directly or indirectly performing duties related to the conduct of any insured's business; or

**(3)**   The spouse . . . of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractors, or independent contractor arising out of paragraph **(1)** or **(2)** above.

This exclusion applies:

**(1)**   Regardless of where the:

**(a)**   Services are performed; or

**(b)**   "Bodily injury" occurs; and

**(2)**   Whether any insured may be liable as an employer  or in any other capacity; and

**(3)**   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

The policy defines "employee" as follows:

"Employee" includes a "leased worker".   "Employee" does not include a "temporary worker".

20.    The second amended complaint alleges that Jimmy Lee Williams' employer, Pantano & Sons, Inc., was retained " . . .  as demolition contractor, for the renovation of the

7

premises for defendant HipCityVeg's occupancy." Second Amended complaint, ¶ 18.

21.     As previously recited, the policy provides that it does not apply to bodily injury to any insured's contractors' employees.  The second amended complaint alleges that Jimmy Lee Williams was an employee of Pantano & Sons, Inc., the demolition contractor on the job.  As a result, the policy does not apply to Jimmy Lee Williams' claims or those of his wife, Davida Williams.

22.     Similarly, in the underlying action No. 180601162 the complaint alleges that Jimmy Lee Williams ". . . was employed by Pantano . . ." (¶ 13) and that Pantano was engaged "… as demolition contractor, for the renovation of the premises for defendant HipCityVeg's occupancy." (Complaint, ¶ 9).

23.     Accordingly, Nautilus is entitled to a declaration that it has no obligation to defend or indemnify HCV 121 S. Broad, LLC, Marquis & Co., LLC, t/a HipCityVeg and Marquis HCV Holdings, LLC under the Nautilus policy in any of the underlying actions.  Nautilus requests an order so declaring and permitting it to withdraw from the defense of the HipCityVeg entities in the underlying actions.

## COUNT II – DECLARATORY JUDGMENT WITH RESPECT TO ADR NORTH AMERICAN, L.P. AND SSH MANAGEMENT, LLC

24.     Nautilus incorporates herein by reference the averments of the preceding paragraphs of this complaint for declaratory judgment as though same were here set forth at length.

25.     The complaint in the underlying action No. 180200624 names as a defendant "SSH Real Estate" which, upon information and belief, is believed to be SSH Management, LLC. That complaint also names as a defendant ADR North American, L.P.  In addition, in the underlying action No. 180601356 the sole defendant named is SSH Management, LLC.

8

26.     As previously recited, each of the complaints in the underlying actions alleges that Jimmy Lee Williams was present on the premises as an employee of Pantano & Sons, Inc. and that Pantano & Sons, Inc. was the demolition contractor for the HipCityVeg renovation project.

27.     The Nautilus policy includes an endorsement entitled "Additional Insured – Managers or Lessors of Premises". In relevant part, the endorsement amends the policy:

> WHO IS AN INSURED (Section **II**) is amended to include as an insured the person or organization shown in the schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you  and shown in the Schedule and subject to the following additional exclusions:
>
> This insurance does not apply to:
>
> **1.**     Any "occurrence" which takes place after you cease to be a tenant in that premises.
>
> **2.**     Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

The Schedule included in the endorsement identifies ADR North American, L.P. and SSH Management, LLC as additional insureds.

28.     Through their insurance carrier, both ADR North American, L.P. and SSH Management, LLC have tendered their defenses to Nautilus contending that both entities are insureds under Nautilus's policy.

29.     The endorsement "Exclusion – Injury to Employees, Contractors, Volunteers and Other Workers" applies equally to the claims for coverage of ADR North American, L.P. and SSH Management, LLC. That exclusion provides that there is no coverage for bodily injury to "any insured's contractors' . . . "employees". Although Jimmy Lee Williams is not alleged to have been an employee of ADR North American, L.P. or SSH Management, LLC, he is alleged to

9

have been an employee of "any insured", i.e., the HipCityVeg. As a result, the exclusion bars coverage for either ADR North American, L.P. or SSH Management, LLC.

30. Nautilus therefore is entitled to a declaration that there is no coverage under the Nautilus policy for either ADR North American, L.P. or SSH Management, LLC in any of the underlying actions and Nautilus respectfully requests this court to enter an order so declaring.

WHEREFORE, Nautilus respectfully requests this court to enter a declaratory judgment in its favor as set forth in each of the counts of this complaint including a declaration that Nautilus is entitled to withdraw the defense it is currently providing in the underlying actions.

                              **BENNETT, BRICKLIN & SALTZBURG** LLC

BY:      _____
                              LOUIS E. BRICKLIN
                              Attorney I.D. No. 20281
                              SARAH E. CROSSLEY
                              Attorney I.D. No. 325916
                              1601 Market Street
                              16th Floor
                              Philadelphia, PA 19103
                              215-561-4300
                              bricklin@bbs-law.com
                              crossley@bbs-aw.com

10

EXHIBIT "A"

**SCOTT A. PORTNER, ESQUIRE**
**MICHAEL J. VENEZIANI, ESQUIRE**
Attorney ID No. 85314 & 206660
FREEDMAN & LORRY, P.C.
1601 Market Street, Suite 1500
Philadelphia, Pa. 19103
(215) 925-8400

**THIS IS NOT AN ARBITRATION CASE**
**AN "ASSESSMENT OF DAMAGES"**
**HEARING IS REQUIRED**

Attorneys for Plaintiff

| | |
|---|---|
| JIMMY LEE WILLIAMS | COURT OF COMMON PLEAS |
| | PHILADELPHIA COUNTY |
| Plaintiff, | |
| v. | |
| | JANUARY TERM, 2018 |
| ADR NORTH AMERICAN LP | |
| HIP CITY VEG | No.: 180200624 |
| SSH REAL ESTATE | |
| JANUS ASSOCIATES, INC. d/b/a COBRA ELECTRIC | |
| MCHENRY PROJECT CONSULTANTS, LLC | |
| MARION ENTERPRISES, INC. | |
| MARION CONSTRUCTION, LLC | |
| MAYES, LLC d/b/a MAYES CONSTRUCTION MANAGEMENT | |
| HITTLE ELECTRIC CORPORATION | |
| PANTANO & SONS, INC. | |
| Defendants | |

## SECOND AMENDED COMPLAINT- CIVIL ACTION
## NOTICE TO PLEAD

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objection to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su personá. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo |

claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Philadelphia Bar Association
Lawyer Referral and Information Service
1101 Market Street, Philadelphia, PA 19107        (215) 238-6300

aviso o notificación.   Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades o otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, Philadelphia, PA 19107        (215) 238-6300

Case ID: 180200624

**SCOTT A. PORTNER, ESQUIRE**
**MICHAEL J. VENEZIANI, ESQUIRE**
Attorney ID No. 85314 & 206660
FREEDMAN & LORRY, P.C.
1601 Market Street, Suite 1500
Philadelphia, Pa. 19103
(215) 925-8400

**THIS IS NOT AN ARBITRATION CASE**
**AN "ASSESSMENT OF DAMAGES"**
**HEARING IS REQUIRED**

Attorneys for Plaintiff

| | |
|---|---|
| JIMMY LEE WILLIAMS | COURT OF COMMON PLEAS |
| | PHILADELPHIA COUNTY |
| Plaintiff, | |
| v. | |
| | JANUARY TERM, 2018 |
| ADR NORTH AMERICAN LP | |
| | |
| HIP CITY VEG | No.: 180200624 |
| | |
| SSH REAL ESTATE | |
| | |
| JANUS ASSOCIATES, INC. d/b/a COBRA ELECTRIC | |
| | |
| MCHENRY PROJECT CONSULTANTS, LLC | |
| | |
| MARION ENTERPRISES, INC. | |
| | |
| MARION CONSTRUCTION, LLC | |
| | |
| MAYES, LLC d/b/a MAYES CONSTRUCTION MANAGEMENT | |
| | |
| HITTLE ELECTRIC CORPORATION | |
| | |
| PANTANO & SONS, INC. | |
| Defendants | |

## CIVIL ACTION
## SECOND AMENDED COMPLAINT

Plaintiff, by and through his undersigned attorneys, claims of Defendants a sum in excess

of Fifty Thousand Dollars ($50,000.00) in damages based upon a cause of action for negligence,

and in support thereof avers as follows:

1.      Plaintiff, Jimmy Lee Williams is an adult individual, who at all relevant times, resided at 2065 Granite Street, Philadelphia, Pennsylvania.

2.      Defendant, ADR North American LP (hereinafter "Defendant" and/or "Defendant ADR"), is a corporate entity with a principal place of business located at 1845 Walnut Street, 22nd Floor, Philadelphia, PA 19103.

3.      Defendant Hip City Veg (hereinafter "Defendant" and/or "Defendant Hip City"), is a corporate entity with a principal place of business located at 121 South Broad Street, Philadelphia, Pennsylvania.

4.      Defendant, SSH Real Estate (hereinafter "Defendant" and/or "Defendant SSH"), is a corporate entity with a principal place of business located at 123 South Broad Street, 8th Floor, Philadelphia, Pennsylvania.

5.      Defendant, Janus Associates, Inc. d/b/a Cobra Electric (hereinafter "Defendant" and/or "Defendant Cobra Electric"), is a corporate entity with a principal place of business located at 1010 Oak Avenue, Croydon, Pennsylvania.

6.      Defendant, McHenry Project Consultants, LLC (hereinafter "Defendant" and/or "Defendant McHenry"), is a corporate entity with a principal place of business located at 1128 E. Fort Avenue, Baltimore, Maryland.

7.      Defendant, Marion Enterprises, Inc. (hereinafter "Defendant" and/or "Defendant Marion Enterprises"), is a corporate entity with a principal place of business located at 1005 Vineyard Path Road, Barboursville, VA 22923.

8.      Defendant, Marion Construction, LLC. (hereinafter "Defendant" and/or "Defendant Marion LLC"), is a corporate entity with a principal place of business located at 6408 Seven Corners Place, No. P, Falls Church, Virginia.

9.     Defendant, Mayes, LLC d/b/a Mayes Construction (hereinafter "Defendant" and/or "Defendant Mayes"), is a corporate entity with a principal place of business located at 400 Stenton Avenue, Ste. 201, Plymouth Meeting, Pennsylvania.

10.    Defendant, Hittle Electric Corporation (hereinafter "Defendant" and/or "Hittle Electric"), is a corporate entity with a principal place of business located at 2144 Priest Bridge Court, Ste. 8, Crofton, Maryland.

11.    On or about June 16, 2016, and at all times pertinent hereto, Defendant ADR owned a commercial mixed-use office building (the "premises") located at 121 South Broad Street in the City and County of Philadelphia, Commonwealth of Pennsylvania which was in the process of being renovated for future occupant, Defendant Hip City Veg.

12.    On or about June 16, 2016, and at all times pertinent hereto, Defendant SSH was responsible for the management and operation of the premises.

13.    Upon information and belief, sometime prior to June 16, 2016, Defendant SSH engaged Defendant Cobra Electric to perform electrical services at the premises, specifically to secure and/or de-energize the wiring and circuits.

14.    Upon information and belief, sometime prior to June 16, 2016, Defendant Hip City Veg engaged Defendant McHenry, as developer, for the renovation of the premises for Defendant Hip City Veg's occupancy.

15.    Upon information and belief, sometime prior to June 16, 2016, Defendant Hip City Veg, engaged Defendant Marion Enterprises and/or Marion, LLC, as general contractor for the renovation of the premises for Defendant Hip City Veg's occupancy.

16.    Upon information and belief, sometime prior to June 16, 2016, Defendant Marion Enterprises and/or Defendant Marion, LLC engaged Defendant Mayes, as superintendent, for the renovation of the premises for Defendant Hip City Veg's occupancy.

17.     Upon information and belief, sometime prior to June 16, 2016, Defendant Marion Enterprises and/or Defendant Marion, LLC engaged Defendant Hittle as electrical contractor, for the renovation of the premises for Defendant Hip City Veg's occupancy.

18.     On or about June 7, 2016, Defendant McHenry engaged Pantano & Sons, Inc. (hereinafter "Pantano") as demolition contractor, for the renovation of the premises for Defendant Hip City Veg's occupancy.

19.     The contract entered into between Defendant McHenry and Pantano for demolition services at the premises provided the following:

"[Pantano] shall furnish all labor tools, equipment, and supervision necessary for the single-phase demolition and removal of the following items:

- All drop ceiling tiles, grid and grid hangers.
- Soffit along front of space.
- **All lights, wiring, ductwork and air handler.**
- Sprinkler system back to disconnect.
- Concealed plaster ceiling and associated wire/suspension system.
- Carpet flooring (no concealed tile).
- Wainscot and base from perimeter walls.
- Masonry and framed portioning from rear of space.
- Concrete mezzanine and associated posts and beams.
- Basement drywall partition between storage rooms and portion of steel pipe running through storage space ([Pantano] will cut off near perimeter walls). (Exhibit "A")

20.     The contract entered into between Defendant McHenry and Pantano specifically excluded "utility disconnects," however Pantano did require temporary utilities to be supplied by others.  (Exhibit "A").

21.     On or about June 16, 2016, and at all times pertinent hereto, Defendants McHenry, Marion Enterprises, Marion LLC, and Mayes undertook to monitor the work being done by all contractors during the course of the renovation in question and to make certain that appropriate safety measures were provided for persons performing work thereat.

22.     On or about June 16, 2016, and at all times pertinent hereto, Plaintiff was employed by Pantano, as a laborer to perform services in connection with the demolition of the premises.

23.     On or about June 16, 2016, at approximately 7:30 a.m., Plaintiff was engaged in the course and scope of his employment with Pantano and was working as a laborer conducting demolition activities at the premises.

24.     While working at the premises, Plaintiff was on a concrete mezzanine cutting electrical wires, when he cut an energized 120/208 volt wire, which was not properly de-energized.

25.     As a result of coming into contact with the foresaid energized wire, Plaintiff was electrocuted and fell approximately 8 feet causing Plaintiff to sustain the catastrophic injuries, suffering, and severe pain more fully described herein.

## COUNT I - NEGLIGENCE
## JIMMY LEE WILLIAMS v. ADR NORTH AMERICAN LP

26.     The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

27.     By reason of the carelessness and negligence of the Defendant ADR North America LP, acting through its agents, servants, workmen and/or employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

28.     Among other things, the carelessness and negligence of Defendant ADR North America LP through its agents, servants, workmen and/or employees, consisted of the following:

a) Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

b) Permitting the installation, construction, design, or supply of electric service to the premises contrary to applicable building codes;

c) Permitting the design, install or construction of the electrical service located inside of the premises, when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d) Permitting employees of contractors at the premises to build, design, or construct the electric service located in the property in question;

e) Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f) Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g) Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i) That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j) Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a menace, danger, nuisance, snare and trap for persons working inside of premises;

k) Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l)  Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded:

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n)  Permitting the installation, design, construction, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o)  Permitting the installation of wire in the premises without properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p)  Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q)  Failing to ensure that all wiring was de-energized;

r)  Permitting entities to perform electrical work in the premises with the knowledge that said entities were not licensed to do so and that said entities had not secured the necessary permits from the Philadelphia Department of License and Inspection to do so.

29.      As a result of the negligence and carelessness of Defendant ADR North America LP, through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear.  He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system.  Plaintiff has in the past required and may in the future continue to require medicines, medical care and attention.  Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

30.      As a result of the negligence and carelessness of Defendant ADR North America LP, through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution

in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

31.     As a result of the negligence and carelessness of Defendant ADR North America LP, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

32.     As a result of the carelessness and negligence of the Defendant ADR North America LP, through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

33.     As a result of the negligence and carelessness of Defendant ADR North America LP, through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant, ADR North America LP, in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

## COUNT II – NEGLIGENCE
## JIMMY LEE WILLIAMS v. HIP CITY VEG

34.     The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

35.     By reason of the carelessness and negligence of the Defendant Hip City Veg, acting through its agents, servants, workmen and/or employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

36.     Among other things, the carelessness and negligence of Defendant Hip City Veg through its agents, servants, workmen and/or employees, consisted of the following:

a) Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

b) Permitting the installation, construction, design, or supply of electric service to the premises contrary to applicable building codes;

c) Permitting the design, install or construction of the electrical service located inside of the premises, when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d) Permitting employees of contractors at the premises to build, design, or construct the electric service located in the property in question;

e) Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f) Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g) Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i) That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j) Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a menace, danger, nuisance, snare and trap for persons working inside of premises;

k) Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l) Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded:

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n) Permitting the installation, design, construction, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o) Permitting the installation of wire in the premises without properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p) Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q) Failing to ensure that all wiring was de-energized;

r) Permitting entities to perform electrical work in the premises with the knowledge that said entities were not licensed to do so and that said entities had not secured the necessary permits from the Philadelphia Department of License and Inspection to do so.

37.     As a result of the negligence and carelessness of Defendant Hip City Veg, through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity; cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear. He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system. Plaintiff has in the past required and may in the future continue to require medicines,

Case ID: 180200624

medical care and attention. Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

38.     As a result of the negligence and carelessness of Defendant Hip City Veg, through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

39.     As a result of the negligence and carelessness of Defendant Hip City Veg, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

40.     As a result of the carelessness and negligence of the Defendant Hip City Veg, through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

41.     As a result of the negligence and carelessness of Defendant Hip City Veg, through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant, Hip City Veg, in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

## COUNT III – NEGLIGENCE
## JIMMY LEE WILLIAMS v. SSH REAL ESTATE

42.     The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

43.     By reason of the carelessness and negligence of the Defendant SSH Real Estate, acting through its agents, servants, workmen and employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

Case ID: 180200624

44.     Among other things, the carelessness and negligence of Defendant SSH Real

Estate consisted of the following:

a) Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

b) Permitting the installation, construction, design, or supply of electric service to the premises contrary to applicable building codes;

c) Permitting the design, install or construction of the electrical service located inside of the premises, when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d) Permitting employees of contractors at the premises to build, design, or construct the electric service located in the property in question;

e) Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f) Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g) Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i) That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j) Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a

menace, danger, nuisance, snare and trap for persons working inside of premises;

k) Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l) Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded:

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n) Permitting the installation, design, construction, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o) Permitting the installation of wire in the premises without properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p) Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q) Failing to ensure that all wiring was de-energized;

r) Permitting entities to perform electrical work in the premises with the knowledge that said entities were not licensed to do so and that said entities had not secured the necessary permits from the Philadelphia Department of License and Inspection to do so.

45.     As a result of the negligence and carelessness of Defendant SSH Real Estate, through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear. He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system. Plaintiff has in the past required and may in the future continue to require

medicines, medical care and attention. Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

46.     As a result of the negligence and carelessness of Defendant SSH Real Estate, through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

47.     As a result of the negligence and carelessness of Defendant SSH Real Estate, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

48.     As a result of the carelessness and negligence of the Defendant SSH Real Estate, through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

49.     As a result of the negligence and carelessness of Defendant SSH Real Estate, through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant SSH Real Estate, in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

## COUNT IV – NEGLIGENCE
## JIMMY LEE WILLIAMS v. JANUS ASSOCIATES, INC. d/b/a COBRA ELECTRIC

50.     The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

51.     By reason of the carelessness and negligence of the Defendant Cobra Electric, acting through its agents, servants, workmen and employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

Case ID: 180200624

52. Among other things, the carelessness and negligence of Defendant Cobra

Electric through its agents, servants, workmen and/or employees, consisted of the following:

a) Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

b) Installing, constructing, designing, or supplying electric service to the property referred to above contrary to applicable building codes;

c) Designing, building, installing or constructing the electrical service located inside of premises when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d) Permitting its employees or contractors to build, design, or construct the electric service located in the property in question;

e) Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f) Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g) Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i) That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j) Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a

menace, danger, nuisance, snare and trap for persons working inside of premises;

k) Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l) Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded:

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n) Installing, designing, constructing, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o) Failing to properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p) Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q) Failing to ensure that all wiring was de-energized;

53.     As a result of the negligence and carelessness of Defendant Cobra Electric, through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear. He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system. Plaintiff has in the past required and may in the future continue to require medicines, medical care and attention. Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

54.     As a result of the negligence and carelessness of Defendant Cobra Electric, through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

55.     As a result of the negligence and carelessness of Defendant Cobra Electric, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

56.     As a result of the carelessness and negligence of the Defendant Cobra Electric, through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

57.     As a result of the negligence and carelessness of Defendant Cobra Electric, through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant Cobra Electric, in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

## COUNT V – NEGLIGENCE
## JIMMY LEE WILLIAMS v. MCHENRY PROJECT CONSULTANTS, LLC

58.     The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

59.     By reason of the carelessness and negligence of the Defendant McHenry Project Consultants, LLC, acting through its agents, servants, workmen and employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

Case ID: 180200624

60.     Among other things, the carelessness and negligence of Defendant McHenry Project Consultants, LLC through its agents, servants, workmen and/or employees, consisted of the following:

a) Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

b) Permitting the installation, construction, design, or supply of electric service to the premises contrary to applicable building codes;

c) Permitting the design, install or construction of the electrical service located inside of the premises, when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d) Permitting employees of contractors at the premises to build, design, or construct the electric service located in the property in question;

e) Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f) Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g) Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i) That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j) Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a menace, danger, nuisance, snare and trap for persons working inside of premises;

k) Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l) Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded:

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n) Permitting the installation, design, construction, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o) Permitting the installation of wire in the premises without properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p) Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q) Failing to ensure that all wiring was de-energized;

r) Permitting entities to perform electrical work in the premises with the knowledge that said entities were not licensed to do so and that said entities had not secured the necessary permits from the Philadelphia Department of License and Inspection to do so.

61.     As a result of the negligence and carelessness of Defendant McHenry Project Consultants, LLC, through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear.  He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular

Case ID: 180200624

changes; and severe shock to the nervous system. Plaintiff has in the past required and may in the future continue to require medicines, medical care and attention. Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

62.     As a result of the negligence and carelessness of Defendant McHenry Project Consultants, LLC through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

63.     As a result of the negligence and carelessness of Defendant McHenry Project Consultants, LLC through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

64.     As a result of the carelessness and negligence of the Defendant McHenry Project Consultants, LLC through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

65.     As a result of the negligence and carelessness of Defendant McHenry Project Consultants, LLC through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant, McHenry Project Consultants, LLC, in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

## COUNT VI - NEGLIGENCE
## JIMMY LEE WILLIAMS v. MARION ENTERPRISES, INC.

66.     The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

67.     By reason of the carelessness and negligence of the Defendant Marion Enterprises, acting through its agents, servants, workmen and employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

68.     Among other things, the carelessness and negligence of Defendant Marion Enterprises, through its agents, servants, workmen and/or employees, consisted of the following:

a) Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

b) Permitting the installation, construction, design, or supply of electric service to the premises contrary to applicable building codes;

c) Permitting the design, install or construction of the electrical service located inside of the premises, when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d) Permitting employees of contractors at the premises to build, design, or construct the electric service located in the property in question;

e) Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f) Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g) Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i)   That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j)   Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a menace, danger, nuisance, snare and trap for persons working inside of premises;

k)   Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l)   Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded:

m)   Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n)   Permitting the installation, design, construction, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o)   Permitting the installation of wire in the premises without properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p)   Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q)   Failing to ensure that all wiring was de-energized;

r)   Permitting entities to perform electrical work in the premises with the knowledge that said entities were not licensed to do so and that said entities had not secured the necessary permits from the Philadelphia Department of License and Inspection to do so.

69.      As a result of the negligence and carelessness of Defendant Marion Enterprises through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower

extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear.  He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system.  Plaintiff has in the past required and may in the future continue to require medicines, medical care and attention.  Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

70.     As a result of the negligence and carelessness of Defendant Marion Enterprises through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

71.     As a result of the negligence and carelessness of Defendant, Marion Enterprises, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

72.     As a result of the carelessness and negligence of the Defendant Marion Enterprises through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

73.     As a result of the negligence and carelessness of Defendant Marion Enterprises through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant, Marion Enterprises in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

## COUNT VII - NEGLIGENCE
## JIMMY LEE WILLIAMS v. MARION CONSTRUCTION, LLC.

74.     The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

75.     By reason of the carelessness and negligence of the Defendant Marion Construction, LLC, acting through its agents, servants, workmen and employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

76.     Among other things, the carelessness and negligence of Defendant Marion Construction, LLC, through its agents, servants, workmen and/or employees, consisted of the following:

a)  Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

b)  Permitting the installation, construction, design, or supply of electric service to the premises contrary to applicable building codes;

c)  Permitting the design, install or construction of the electrical service located inside of the premises, when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d)  Permitting employees of contractors at the premises to build, design, or construct the electric service located in the property in question;

e)  Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f)  Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g)  Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i) That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j) Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a menace, danger, nuisance, snare and trap for persons working inside of premises;

k) Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l) Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded:

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n) Permitting the installation, design, construction, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o) Permitting the installation of wire in the premises without properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p) Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q) Failing to ensure that all wiring was de-energized;

r) Permitting entities to perform electrical work in the premises with the knowledge that said entities were not licensed to do so and that said entities had not secured the necessary permits from the Philadelphia Department of License and Inspection to do so.

77.     As a result of the negligence and carelessness of Defendant Marion Construction, LLC through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear. He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system. Plaintiff has in the past required and may in the future continue to require medicines, medical care and attention. Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

78.     As a result of the negligence and carelessness of Defendant Marion Construction, LLC through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

79.     As a result of the negligence and carelessness of Defendant, Marion Construction LLC, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

80.     As a result of the carelessness and negligence of the Defendant Marion Construction, LLC through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

81.     As a result of the negligence and carelessness of Defendant Marion Construction, LLC through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant, Marion Construction, LLC in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

## COUNT VIII - NEGLIGENCE
### JIMMY LEE WILLIAMS v. MAYES, LLC d/b/a MAYES CONSTRUCTION MANAGEMENT

82.     The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

83.     By reason of the carelessness and negligence of the Defendant Mayes Construction Management, acting through its agents, servants, workmen and employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

84.     Among other things, the carelessness and negligence of Defendant Mayes Construction Management through its agents, servants, workmen and/or employees, consisted of the following:

a) Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

b) Permitting the installation, construction, design, or supply of electric service to the premises contrary to applicable building codes;

c) Permitting the design, install or construction of the electrical service located inside of the premises, when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d) Permitting employees of contractors at the premises to build, design, or construct the electric service located in the property in question;

e) Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f) Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g) Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i) That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j) Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a menace, danger, nuisance, snare and trap for persons working inside of premises;

k) Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l) Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded:

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n) Permitting the installation, design, construction, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o) Permitting the installation of wire in the premises without properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p) Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

Case ID: 180200624

q) Failing to ensure that all wiring was de-energized;

r) Permitting entities to perform electrical work in the premises with the knowledge that said entities were not licensed to do so and that said entities had not secured the necessary permits from the Philadelphia Department of License and Inspection to do so.

85.     As a result of the negligence and carelessness of Defendant Mayes Construction Management, through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear.  He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system.  Plaintiff has in the past required and may in the future continue to require medicines, medical care and attention.  Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

86.     As a result of the negligence and carelessness of Defendant Mayes Construction Management, through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

87.     As a result of the negligence and carelessness of Defendant Mayes Construction Management, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

88.     As a result of the carelessness and negligence of the Defendant, Mayes Construction Management, through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and

avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

89.     As a result of the negligence and carelessness of Defendant Mayes Construction Management, through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant, Mayes Construction Management, in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

**COUNT IV - NEGLIGENCE**
**JIMMY LEE WILLIAMS v. HITTLE ELECTRIC CORPORATION**

90.     The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

91.     By reason of the carelessness and negligence of the Defendant Hittle Electric, acting through its agents, servants, workmen and employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

92.     Among other things, the carelessness and negligence of Defendant Hittle Electric through its agents, servants, workmen and/or employees, consisted of the following:

a) Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

b) Installing, constructing, designing, or supplying electric service to the property referred to above contrary to applicable building codes;

c) Designing, building, installing or constructing the electrical service located inside of premises when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d) Permitting its employees or contractors to build, design, or construct the electric service located in the property in question;

Case ID: 180200624

e) Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f) Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g) Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i) That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j) Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a menace, danger, nuisance, snare and trap for persons working inside of premises;

k) Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l) Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded;

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n) Installing, designing, constructing, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o) Failing to properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p) Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q) Failing to ensure that all wiring was de-energized;

93. As a result of the negligence and carelessness of Defendant Hittle Electric, through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear. He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system. Plaintiff has in the past required and may in the future continue to require medicines, medical care and attention. Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

94. As a result of the negligence and carelessness of Defendant Hittle Electric, through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

95. As a result of the negligence and carelessness of Defendant Hittle Electric, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

96. As a result of the carelessness and negligence of the Defendant Hittle Electric, through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to

be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

97.     As a result of the negligence and carelessness of Defendant Hittle Electric, through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant Hittle Electric, in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

**FREEDMAN AND LORRY, P.C.**

By:_____
MICHAEL J. VENEZIANI, ESQUIRE
Attorneys for Plaintiff

Dated:  May 22, 2018

Case ID: 180200624

# EXHIBIT "B"

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**JUNE 2018**

E-Filing Number: 1806022566

**001162**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| JIMMY LEE WILLIAMS | HCV 121 S BROAD, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 2065 GRANITE STREET<br>PHILADELPHIA PA 19124 | 127 S. 18TH STREET<br>PHILADELPHIA PA 19103 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | MARQUIS & CO. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 127 S. 18TH STREET<br>PHILADELPHIA PA 19103 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | STOKES ARCHITECTURE, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 2103 SANSOM STREET<br>PHILADELPHIA PA 19103 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 4 | ☒ Complaint<br>☐ Writ of Summons | ☐ Petition Action<br>☐ Transfer From Other Jurisdictions | ☐ Notice of Appeal |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

CASE TYPE AND CODE

2S - PREMISES LIABILITY, SLIP/FALL

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|---|
| | **FILED**<br>**PRO PROTHY**<br>JUN 11 2018<br>**K. EDWARDS** | YES     NO |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: JIMMY LEE WILLIAMS

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| MICHAEL J. VENEZIANI | FREEDMAN & LORRY, P.C.<br>1601 MARKET ST. |

| PHONE NUMBER | FAX NUMBER | SUITE 1500 |
|---|---|---|
| (215)925-8400 | none entered | PHILADELPHIA PA 19103 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 206660 | mveneziani@freedmanlorry.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *MICHAEL VENEZIANI* | Monday, June 11, 2018, 03:19 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF DEFENDANTS:

1. HCV 121 S BROAD, LLC
   127 S. 18TH STREET
   PHILADELPHIA PA 19103
2. MARQUIS & CO.
   127 S. 18TH STREET
   PHILADELPHIA PA 19103
3. STOKES ARCHITECTURE, LLC
   2103 SANSOM STREET
   PHILADELPHIA PA 19103
4. A & S SPRINKLER COMPANY, INC.
   101 E. LAUREL AVENUE
   CHELTENHAM PA 19012

SCOTT A. PORTNER, ESQUIRE
MICHAEL J. VENEZIANI, ESQUIRE
Attorney ID No. 85314 & 206660
FREEDMAN & LORRY, P.C.
1601 Market Street, Suite 1500
Philadelphia, Pa. 19103
(215) 925-8400

THIS IS NOT AN ARBITRATION CASE
AN "ASSESSMENT OF DAMAGES"
HEARING IS REQUIRED

Attorneys for Plaintiff

| | | |
|---|---|---|
| JIMMY LEE WILLIAMS | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| Plaintiff, | : | |
| | : | |
| v. | : | JUNE TERM, 2018 |
| | : | |
| HCV 121 S Broad, LLC | : | |
| 127 S. 18th St. | : | |
| Philadelphia, PA 19103 | : | No.: |
| | : | |
| MARQUIS & CO. | : | |
| 127 S. 18th St. | : | |
| Philadelphia, PA 19103 | : | |
| | : | |
| STOKES ARCHITECTURE, LLC | : | |
| 2103 Sansom St. | : | |
| Philadelphia, PA 19103 | : | |
| | : | |
| A & S SPRINKLER COMPANY, INC. | : | |
| 101 E. Laurel Ave. | : | |
| Cheltenham, PA 19012 | : | |
| | : | |
| Defendants | : | |

## COMPLAINT- CIVIL ACTION
## NOTICE TO PLEAD

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objection to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Philadelphia Bar Association
Lawyer Referral and Information Service
1101 Market Street, Philadelphia, PA 19107          (215) 238-6300

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades o otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, Philadelphia, PA 19107          (215) 238-6300

Case ID: 180601162

SCOTT A. PORTNER, ESQUIRE
MICHAEL J. VENEZIANI, ESQUIRE
Attorney ID No. 85314 & 206660
FREEDMAN & LORRY, P.C.
1601 Market Street, Suite 1500
Philadelphia, Pa. 19103
(215) 925-8400

THIS IS NOT AN ARBITRATION CASE
AN "ASSESSMENT OF DAMAGES"
HEARING IS REQUIRED

Attorneys for Plaintiff

| | | |
|---|---|---|
| JIMMY LEE WILLIAMS | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | JUNE TERM, 2018 |
| HCV 121 S BROAD, LLC | : | |
| 127 S. 18th St. | : | |
| Philadelphia, PA 19103 | : | |
| | : | No.: |
| MARQUIS & CO. | : | |
| 127 S. 18th St. | : | |
| Philadelphia, PA 19103 | : | |
| | : | |
| STOKES ARCHITECTURE, LLC | : | |
| 2103 Sansom St. | : | |
| Philadelphia, PA 19103 | : | |
| | : | |
| A & S SPRINKLER COMPANY, INC. | : | |
| 101 E. Laurel Ave. | : | |
| Cheltenham, PA 19012 | : | |
| | : | |
| Defendants. | : | |

## CIVIL ACTION
## COMPLAINT

Plaintiff, by and through his undersigned attorneys, claims of Defendants a sum in excess

of Fifty Thousand Dollars ($50,000.00) in damages based upon a cause of action for negligence,

and in support thereof avers as follows:

1.    Plaintiff, Jimmy Lee Williams is an adult individual, who at all relevant times,

resided at 2065 Granite Street, Philadelphia, Pennsylvania.

Case ID: 180601162

2.      Defendant, HCV 121 S Broad, LLC (hereinafter "Defendant" and/or "Defendant HCV"), is a corporate entity with a principal place of business located at 127 S. 8th Street, Philadelphia, Pennsylvania.

3.      Defendant Marquis & Co. (hereinafter "Defendant" and/or "Defendant Marquis"), is a corporate entity with a principal place of business located at 127 S. 8th Street, Philadelphia, Pennsylvania.

4.      Defendant, Stokes Architecture (hereinafter "Defendant" and/or "Defendant Stokes"), is a corporate entity with a principal place of business located at 2103 Sansom Street, Philadelphia, Pennsylvania.

5.      Defendant, A & S Sprinkle Company, Inc. (hereinafter "Defendant" and/or "Defendant A & S"), is a corporate entity with a principal place of business located at 101 E. Laurel Ave. Cheltenham, Pennsylvania.

6.      On or about June 16, 2016, and at all times pertinent hereto, Defendant HCV and/or Defendant Marquis were owners of a project to renovate 121 South Broad Street in the City and County of Philadelphia, Commonwealth of Pennsylvania (the "premises"), for the future occupancy of Hip City Veg.

7.      On or about June 16, 2016, and at all times pertinent hereto, Defendant Stokes was the architect responsible for the design of the renovation of the premises, for the future occupancy of Hip City Veg.

8.      Upon information and belief, sometime prior to June 16, 2016, McHenry Project Consultants, LLC (hereinafter "McHenry") engaged Defendant A & S to relocate sprinkler lines in the premises to allow for demolition and renovation.

Case ID: 180601162

9.    On or about June 7, 2016, McHenry engaged Pantano & Sons, Inc. (hereinafter "Pantano") as demolition contractor, for the renovation of the premises for Defendant Hip City Veg's occupancy.

10.    The contract entered into between McHenry and Pantano for demolition services at the premises provided the following:

"[Pantano] shall furnish all labor tools, equipment, and supervision necessary for the single-phase demolition and removal of the following items:

- All drop ceiling tiles, grid and grid hangers.
- Soffit along front of space.
- **All lights, wiring, ductwork and air handler.**
- Sprinkler system back to disconnect.
- Concealed plaster ceiling and associated wire/suspension system.
- Carpet flooring (no concealed tile).
- Wainscot and base from perimeter walls.
- Masonry and framed portioning from rear of space.
- Concrete mezzanine and associated posts and beams.
- Basement drywall partition between storage rooms and portion of steel pipe running through storage space ([Pantano] will cut off near perimeter walls). (Exhibit "A")

11.    The contract entered into between McHenry and Pantano specifically excluded "utility disconnects," however Pantano did require temporary utilities to be supplied by others. (Exhibit "A").

12.    On or about June 16, 2016, and at all times pertinent hereto, Defendant HCV, Defendant Marquis & Co., Defendant Stokes, and Defendant A & S, undertook to monitor the work being done by all contractors during the course of the renovation in question and to make certain that appropriate safety measures were provided for persons performing work thereat.

13.    On or about June 16, 2016, and at all times pertinent hereto, Plaintiff was employed by Pantano, as a laborer to perform services in connection with the demolition of the premises.

Case ID: 180601162

14.    On or about June 16, 2016, at approximately 7:30 a.m., Plaintiff was engaged in the course and scope of his employment with Pantano and was working as a laborer conducting demolition activities at the premises.

15.    While working at the premises, Plaintiff was on a concrete mezzanine cutting electrical wires, when he cut an energized 120/208 volt wire, which was not properly de-energized.

16.    As a result of coming into contact with the foresaid energized wire, Plaintiff was electrocuted and fell approximately 8 feet causing Plaintiff to sustain the catastrophic injuries, suffering, and severe pain more fully described herein.

## COUNT I - NEGLIGENCE
## JIMMY LEE WILLIAMS v. HCV 121 S BROAD, LLC

17.    The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

18.    By reason of the carelessness and negligence of the Defendant HCV, acting through its agents, servants, workmen and/or employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

19.    Among other things, the carelessness and negligence of Defendant HCV through its agents, servants, workmen and/or employees, consisted of the following:

a) Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

b) Permitting the installation, construction, design, or supply of electric service to the premises contrary to applicable building codes;

c) Permitting the design, install or construction of the electrical service located inside of the premises, when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

Case ID: 180601162

d) Permitting employees of contractors at the premises to build, design, or construct the electric service located in the property in question;

e) Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f) Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g) Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i) That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j) Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a menace, danger, nuisance, snare and trap for persons working inside of premises;

k) Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l) Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded;

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

Case ID: 180601162

n)  Permitting the installation, design, construction, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o)  Permitting the installation of wire in the premises without properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p)  Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q)  Failing to ensure that all wiring was de-energized;

r)  Permitting entities to perform electrical work in the premises with the knowledge that said entities were not licensed to do so and that said entities had not secured the necessary permits from the Philadelphia Department of License and Inspection to do so.

20.     As a result of the negligence and carelessness of Defendant HCV, through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear. He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system. Plaintiff has in the past required and may in the future continue to require medicines, medical care and attention. Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

21.     As a result of the negligence and carelessness of Defendant HCV, through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

22.     As a result of the negligence and carelessness of Defendant HCV, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will

continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

23.     As a result of the carelessness and negligence of the Defendant HCV, through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

24.     As a result of the negligence and carelessness of Defendant HCV, through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant, HCV, in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

## COUNT II – NEGLIGENCE
## JIMMY LEE WILLIAMS v. MARQUIS & CO.

25.     The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

26.     By reason of the carelessness and negligence of the Defendant Marquis, acting through its agents, servants, workmen and/or employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

27.     Among other things, the carelessness and negligence of Defendant Marquis through its agents, servants, workmen and/or employees, consisted of the following:

a) Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

b) Permitting the installation, construction, design, or supply of electric service to the premises contrary to applicable building codes;

c) Permitting the design, install or construction of the electrical service located inside of the premises, when it knew or should have known that the electrical

Case ID: 180601162

service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d) Permitting employees of contractors at the premises to build, design, or construct the electric service located in the property in question;

e) Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f) Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g) Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i) That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j) Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a menace, danger, nuisance, snare and trap for persons working inside of premises;

k) Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l) Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded:

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n) Permitting the installation, design, construction, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o) Permitting the installation of wire in the premises without properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p) Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q) Failing to ensure that all wiring was de-energized;

r) Permitting entities to perform electrical work in the premises with the knowledge that said entities were not licensed to do so and that said entities had not secured the necessary permits from the Philadelphia Department of License and Inspection to do so.

28.    As a result of the negligence and carelessness of Defendant Marquis, through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear. He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system. Plaintiff has in the past required and may in the future continue to require medicines, medical care and attention. Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

29.    As a result of the negligence and carelessness of Defendant Marquis, through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

30.     As a result of the negligence and carelessness of Defendant Marquis, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

31.     As a result of the carelessness and negligence of the Defendant Marquis, through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

32.     As a result of the negligence and carelessness of Defendant Marquis, through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant, Marquis, in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

## COUNT III – NEGLIGENCE
## JIMMY LEE WILLIAMS v. STOKES ARCHITECTURE, LLC

33.     The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

34.     By reason of the carelessness and negligence of the Defendant Stokes, acting through its agents, servants, workmen and employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

35.     Among other things, the carelessness and negligence of Defendant Stokes consisted of the following:

a)  Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

Case ID: 180601162

b) Permitting the installation, construction, design, or supply of electric service to the premises contrary to applicable building codes;

c) Permitting the design, install or construction of the electrical service located inside of the premises, when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d) Permitting employees of contractors at the premises to build, design, or construct the electric service located in the property in question;

e) Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f) Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g) Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i) That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j) Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a menace, danger, nuisance, snare and trap for persons working inside of premises;

k) Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

Case ID: 180601162

l) Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded:

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n) Permitting the installation, design, construction, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o) Permitting the installation of wire in the premises without properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p) Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q) Failing to ensure that all wiring was de-energized;

r) Permitting entities to perform electrical work in the premises with the knowledge that said entities were not licensed to do so and that said entities had not secured the necessary permits from the Philadelphia Department of License and Inspection to do so.

36.    As a result of the negligence and carelessness of Defendant Stokes, through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear. He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system. Plaintiff has in the past required and may in the future continue to require medicines, medical care and attention. Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

Case ID: 180601162

37.     As a result of the negligence and carelessness of Defendant Stokes, through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

38.     As a result of the negligence and carelessness of Defendant Stokes, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

39.     As a result of the carelessness and negligence of the Defendant Stokes, through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

40.     As a result of the negligence and carelessness of Defendant Stokes, through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant Stokes, in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

## COUNT IV – NEGLIGENCE
## JIMMY LEE WILLIAMS v. A & S SPRINKLER COMPANY, INC.

41.     The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

42.     By reason of the carelessness and negligence of the Defendant A & S, acting through its agents, servants, workmen and employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

43.     Among other things, the carelessness and negligence of Defendant A & S through its agents, servants, workmen and/or employees, consisted of the following:

Case ID: 180601162

a) Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

b) Permitting the installation, construction, design, or supply of electric service to the premises contrary to applicable building codes;

c) Permitting the design, install or construction of the electrical service located inside of the premises, when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d) Permitting employees of contractors at the premises to build, design, or construct the electric service located in the property in question;

e) Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f) Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g) Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h) Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i) That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j) Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a menace, danger, nuisance, snare and trap for persons working inside of premises;

Case ID: 180601162

k) Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l) Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded:

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n) Permitting the installation, design, construction, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o) Permitting the installation of wire in the premises without properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p) Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q) Failing to ensure that all wiring was de-energized;

r) Permitting entities to perform electrical work in the premises with the knowledge that said entities were not licensed to do so and that said entities had not secured the necessary permits from the Philadelphia Department of License and Inspection to do so.

44.     As a result of the negligence and carelessness of Defendant A & S, through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear. He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system. Plaintiff has in the past required and may in the future continue to

require medicines, medical care and attention. Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

45.    As a result of the negligence and carelessness of Defendant A & S, through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

46.    As a result of the negligence and carelessness of Defendant A & S, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

47.    As a result of the carelessness and negligence of the Defendant A & S, through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

48.    As a result of the negligence and carelessness of Defendant A & S, through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant A & S, in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

FREEDMAN AND LORRY, P.C.

By:_____
     MICHAEL J. VENEZIANI, ESQUIRE
     Attorneys for Plaintiff

Dated: June 5, 2018

Case ID: 180601162

## VERIFICATION

I, MICHAEL J. VENEZIANI, ESQUIRE hereby verify that I am the Attorney for the Plaintiff in the foregoing action; that the attached Complaint in Civil Action is based upon information, which the client furnished to counsel and information, which has been gathered by counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not mine. I have read the Complaint, and to the extent the statements therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information and belief. To the extent the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that if false statements were made herein I would be subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

MICHAEL J. VENEZIANI, ESQUIRE
Attorney for Plaintiff

DATE: 6/11/18

Case ID: 180601162



June 7, 2016

Chris DeLuca
McHenry Project Consultants
841 E. Fort Ave., Ste. 239
Baltimore, MD 21230

RE:    Hip City Veg
       121 S. Broad St., Philadelphia, PA

Dear Chris:

We are pleased to submit the following <u>revised</u> proposal and estimate:

We shall furnish all labor, tools, equipment, and supervision necessary for the single-phase demolition and removal of the following items:

- All drop ceiling tiles, grid and grid hangers.
- Soffit along front of space.
- All lights, wiring, ductwork and air handler.
- Sprinkler system back to disconnect.
- Concealed plaster ceiling and associated wire/suspension system.
- Carpet flooring (no concealed tile).
- Wainscot and base from perimeter walls.
- Masonry and framed partitioning from rear of space.
- Concrete mezzanine and associated posts and beams.
- Basement drywall partition between storage rooms and portion of steel pipe running through storage space (we will cut off near perimeter walls).
- ~~Alternate #1: Terrazzo flooring down to concrete sub-surface using electric hammers (no subsequent floor preparation/grinding).~~

o   Hauling and legal disposal or recycling of all debris resulting from our work is included.
o   We will load-out exclusively via the rear alley entry to our truck/container in the immediate parking area.
o   Work area to be left street broom clean.

<u>Exclusions & Qualifications:</u>
1.  No permits;
2.  No utility disconnects or capping (we will require temp utilities and toilet provided by others).
3.  No protection for dust or finishes outside of work area.
4.  No removals for owner's reuse or salvage.
5.  No hazardous material removal.
6.  No mastic removal, surface preparation, or patching.
7.  No concealed flooring.
8.  Work to be performed non-union (any cost associated with union interference to be absorbed by McHenry Project Consultants).
9.  Existing storefront glass to be covered for privacy prior to demo (we will protect glass from breakage during our work).

Case ID: 180601162

EXHIBIT "C"

SCOTT A. PORTNER, ESQUIRE
MICHAEL J. VENEZIANI, ESQUIRE
Attorney ID No. 85314 & 206660
FREEDMAN & LORRY, P.C.
1601 Market Street, Suite 1500
Philadelphia, Pa. 19103
(215) 925-8400

THIS IS NOT AN ARBITRATION CASE
AN "ASSESSMENT OF DAMAGES"
HEARING IS REQUIRED

Attorneys for Plaintiff

| | | |
|---|---|---|
| JIMMY LEE WILLIAMS | : | COURT OF COMMON PLEAS |
| 2065 Granite Street | : | PHILADELPHIA COUNTY |
| Philadelphia, PA 19124 | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| SSH MANAGEMENT, LLC | : | JUNE TERM, 2018 |
| 123 South Broad Street, Suite 850 | : | |
| Philadelphia, PA 19109 | : | NO. |
| | : | |
| | : | |
| Defendant | : | |
| | : | |
| | : | |

## COMPLAINT- CIVIL ACTION
## NOTICE TO PLEAD

### NOTICE

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objection to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.
IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Philadelphia Bar Association
Lawyer Referral and Information Service
1101 Market Street, Philadelphia, PA 19107      (215) 238-6300

### AVISO

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su personá.  Sea avisado que si usted no se defiende, la corte tomará medidas y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades o otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.
SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, Philadelphia, PA 19107      (215) 238-6300

Case ID: 180601356

**SCOTT A. PORTNER, ESQUIRE**
**MICHAEL J. VENEZIANI, ESQUIRE**
Attorney ID No. 85314 & 206660
FREEDMAN & LORRY, P.C.
1601 Market Street, Suite 1500
Philadelphia, Pa. 19103
(215) 925-8400

**THIS IS NOT AN ARBITRATION CASE**
**AN "ASSESSMENT OF DAMAGES"**
**HEARING IS REQUIRED**

Attorneys for Plaintiff

| | | |
|---|---|---|
| JIMMY LEE WILLIAMS | : | COURT OF COMMON PLEAS |
| 2065 Granite Street | : | PHILADELPHIA COUNTY |
| Philadelphia, PA 19124 | : | |
| Plaintiff, | : | |
| v. | : | |
| SSH MANAGEMENT, LLC | : | JUNE TERM, 2018 |
| 123 South Broad Street, Suite 850 | : | |
| Philadelphia, PA 19109 | : | NO. |
| | : | |
| | : | |
| Defendant | : | |
| | : | |

## CIVIL ACTION
## COMPLAINT

Plaintiff, by and through his undersigned attorneys, claims of Defendant a sum in excess of Fifty Thousand Dollars ($50,000.00) in damages based upon a cause of action for negligence, and in support thereof avers as follows:

1.    Plaintiff, Jimmy Lee Williams is an adult individual, who at all relevant times, resided at 2065 Granite Street, Philadelphia, Pennsylvania.

2.    Defendant, SSH Management, LLC (hereinafter "Defendant" and/or "Defendant SSH"), is a corporate entity with a principal place of business located at 121 South Broad Street, Suite 850, Philadelphia, Pennsylvania.

3.    On or about June 16, 2016, and at all times pertinent hereto, Defendant SSH was responsible for the management and operations of the premises located at 121 South Broad Street in the City and County of Philadelphia, Commonwealth of Pennsylvania which was in the process of being renovated for future occupant, Defendant Hip City Veg.

Case ID: 180601356

4.      On or about June 16, 2016, and at all times pertinent hereto, Plaintiff was employed by Pantano, as a laborer to perform services in connection with the demolition of the premises.

5.      On or about June 16, 2016, at approximately 7:30 a.m., Plaintiff was engaged in the course and scope of his employment with Pantano and was working as a laborer conducting demolition activities at the premises.

6.      While working at the premises, Plaintiff was on a concrete mezzanine cutting electrical wires, when he cut an energized 120/208 volt wire, which was not properly de-energized.

7.      As a result of coming into contact with the foresaid energized wire, Plaintiff was electrocuted and fell approximately 8 feet causing Plaintiff to sustain the catastrophic injuries, suffering, and severe pain more fully described herein.

## COUNT I - NEGLIGENCE

8.      The foregoing paragraphs are incorporated herein by reference as though duly set forth at length.

9.      By reason of the carelessness and negligence of the Defendant SSH, acting through its agents, servants, workmen and/or employees, the Plaintiff was caused to sustain the injuries, more fully described herein.

10.     Among other things, the carelessness and negligence of Defendant SSH through its agents, servants, workmen and/or employees, consisted of the following:

    a)  Allowing wiring to exist at the premises that was energized, when it knew or should have known that workers at the premises would be working in the area of said energized wiring and may come into contact with same;

    b)  Permitting the installation, construction, design, or supply of electric service to the premises contrary to applicable building codes;

c)  Permitting the design, install or construction of the electrical service located inside of the premises, when it knew or should have known that the electrical service inside of the premises was dangerous and that a worker could come into contact with said dangerously installed electrical service designed, installed, built or constructed by the Defendants;

d)  Permitting employees of contractors at the premises to build, design, or construct the electric service located in the property in question;

e)  Failing to build, design, or construct the electrical service located at the premises in a reasonably safe condition by permitting improper or inadequate materials to be used in the building, design, or construction of same;

f)  Failing to warn workers such as Plaintiff working in proximity of the energized wire in the premises in which Defendant knew or should have known was energized;

g)  Failing to personally inspect the electrical wiring that was installed, constructed or designed by the entities retained by Defendant to ascertain whether same was safe for someone such as the Plaintiff who may be working in the area where said electric service was installed by Defendant's employees;

h)  Acting in disregard of the rights and safety of the Plaintiff by failing to provide some form of protection from energized wiring to protect workers such as Plaintiff whom the Defendant knew, or should have known would be working in the area of said energized wiring at some time in the future;

i)  That said Defendant permitted the installation, design, construction or placement of the electrical wiring located in the premises in violation of to the general safety standards, precautionary standards, and other safety standards of the industry in violation of the appropriate federal, state, and local laws, rules, regulations, and code;

j)  Permitting the energized wiring in question to become and to remain in a dangerous, defective, hazardous and unsafe condition so as to constitute a menace, danger, nuisance, snare and trap for persons working inside of premises;

k)  Failing to appreciate the existence of the improper wiring in the property in question when said energized wiring was accessible by Plaintiff, and the same was not marked with warnings of any sort, or was guarded in any manner;

l)  Failing to warn Plaintiff of the dangers of working in the premises, when the defendant knew or should have known that the premises contained wiring that was not properly de-energized or grounded:

m) Failing to mark the wiring in question in some fashion so that anyone such as Plaintiff wo may be working in the area of said wiring could easily recognize the dangers associated with said wiring;

n) Permitting the installation, design, construction, or building the electrical wiring located inside the premises in complete contradiction to the U.S. Department of Labor, OSHA codes and requirements;

o) Permitting the installation of wire in the premises without properly determining that said wiring was properly de-energized or grounded, in complete contradiction to the requirements of all local, State, and Federal Building Codes;

p) Failing to inspect the wiring that said Defendant was installing in the premises to verify that same was properly marked with warnings;

q) Failing to ensure that all wiring was de-energized;

r) Permitting entities to perform electrical work in the premises with the knowledge that said entities were not licensed to do so and that said entities had not secured the necessary permits from the Philadelphia Department of License and Inspection to do so.

11.     As a result of the negligence and carelessness of Defendant SSH, through its agents, servants, workmen and/or employees, Plaintiff suffered and continues to suffer serious injuries including, but not limited to, electrical injury to the left upper and lower extremity, cervical, and lumbar spine; neuropathy in the left upper and lower extremity; cervical and lumbar strain; knee strain; and posterior cruciate ligament tear. He sustained other serious orthopedic, neurological and internal injuries; arthritic and vascular changes; and severe shock to the nervous system. Plaintiff has in the past required and may in the future continue to require medicines, medical care and attention. Plaintiff has in the past suffered and will continue to suffer agonizing aches, pains and mental anguish.

12.     As a result of the negligence and carelessness of Defendant SSH, through its agents, servants, workmen and/or employees, Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

13.   As a result of the negligence and carelessness of Defendant SSH, through its agents, servants, workmen and/or employees, Plaintiff incurred excess medical expenses, will continue to incur medical expenses, and has additionally incurred other outstanding bills related to the accident which are recoverable as damages.

14.   As a result of the carelessness and negligence of the Defendant SSH, through its agents, servants, workmen and/or employees, Plaintiff has been and may continue to be disabled from performing his usual duties, occupations and avocations, and Plaintiff has suffered and may continue to suffer lost wages and loss of earning capacity.

15.   As a result of the negligence and carelessness of Defendant SSH through its agents, servants, workmen and/or employees, Plaintiff has suffered other economic losses which are recoverable as damages.

Wherefore, Plaintiff, JIMMY LEE WILLIAMS, demands judgment against Defendant, SSH, in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

**FREEDMAN AND LORRY, P.C.**

By:_____
MICHAEL J. VENEZIANI, ESQUIRE
Attorneys for Plaintiff

Dated:  June 12, 2018

## VERIFICATION

I, MICHAEL J. VENEZIANI, ESQUIRE hereby verify that I am the Attorney for the Plaintiff in the foregoing action; that the attached Complaint in Civil Action is based upon information, which the client furnished to counsel and information, which has been gathered by counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not mine. I have read the Complaint, and to the extent the statements therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information and belief. To the extent the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that if false statements were made herein I would be subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

MICHAEL J. VENEZIANI, ESQUIRE
Attorney for Plaintiff

DATE: _6/13/18_

Case ID: 180601356

# MANAGEMENT AGREEMENT

**THIS MANAGEMENT AGREEMENT** (the "Agreement") is made on the 20th day of November, 2014, by and between ADR North American, L.P., having an address of 1845 Walnut Street, Philadelphia, PA (hereinafter called the "Owner"), and SSH Management, LLC, having an address of 123 South Broad Street, Suite 850, Philadelphia, PA 19109 (hereinafter called the "Manager").

**WHEREAS,** Owner owns The North American Building upon which is built one office building which totals approximately 142,000 square feet (said land and building are hereinafter collectively referred to as the "Property"); and

**WHEREAS,** the Owner wishes to engage Manager to perform certain duties in connection with the management of the Property, as more fully set forth herein, and Manager wishes to accept such engagement, upon all the terms and conditions hereof.

**NOW THEREFORE,** in consideration of the foregoing promises and the mutual promises and covenants herein made, and intending to be legally bound, the Owner and the Manager hereby agree as follows:

1. **ENGAGEMENT.** Owner hereby engages Manager as the exclusive manager of the Property, and Manager hereby accepts such engagement, subject to the terms and conditions of this Agreement. Manager is an independent contractor, who is assigned the limited powers contained herein, and no other relationship is created hereby.

2. **TERMS AND TERMINATION.**

    (a) **Initial and Renewal Terms.** Unless sooner terminated, as provided below, this Agreement shall commence on January 1, 2015, and shall be in effect for a period ending one year thereafter (the "Initial Term") unless earlier terminated in accordance herewith, and shall continue hereafter from year to year (the "Renewal Terms"; together with the Initial Term, the "Term") in full force and effect unless terminated in accordance herewith. Either party may terminate this Agreement after the end of the first year by providing the other party with sixty (60) days prior written notice of termination. Notwithstanding the foregoing, in the event that all or any portion of the Property is sold, this Agreement shall terminate on the date of sale, as to the portion of the Property that is sold provided that Owner has given Manager at least thirty (30) days prior written notice of such sale.

    (b) **Owner's Right to Terminate.** Owner shall have the right to terminate this Agreement effective immediately upon the happening any one of the following concerns:

        (i) The filing of a voluntary petition in bankruptcy by Manager;

        (ii) A proceeding in bankruptcy or insolvency brought against Manager, or the appointment of a receiver for Manager or its assets in any bankruptcy or insolvency proceeding, provided that such

Case ID: 180200624

Case ID: 180200624

(iii)    proceeding or appointment is not dismissed within sixty (60) days of the date of filing.

(iii)    The attachment or any other levy or lien filed against Manager, excluding a judgment lien that is covered by insurance, provided that such attachment, levy or lien is not discharged by bond or otherwise within sixty (60) days of the date of filing.

(iv)    The failure by Manager to cure a default under this Agreement within fifteen (15) days after receipt of notice from Owner that Manager is in default; provided, however, that if such default cannot reasonably be cured within such fifteen (15) day period, the time for Manager to cure such be extended as long as reasonably necessary so long as Manager commences such cure within fifteen (15) days after receipt of notice from Owner that Manager is in default and Manager is diligently pursuing such cure.

(c)    **Manager's Right to Terminate.** Manager shall have the right to terminate this Agreement effective immediately upon the happening any one of the following conditions:

(i)    The filing of a voluntary petition in bankruptcy by Owner.

(ii)    A proceeding in bankruptcy or insolvency brought against Owner, or the appointment of a receiver for Owner, the Property or the other assets of Owner in any bankruptcy or insolvency proceeding, provided that such proceeding or appointment is not dismissed within sixty (60) days of the date of filing.

(iii)    The attachment or any other levy or lien filed against Owner, excluding a judgment lien that is covered by insurance, provided that such attachment, levy or lien is not discharged by bond or otherwise within sixty (60) days of the date of filing.

(iv)    The failure by Owner to pay Manager the Management Fee (defined below) or the Construction Management Fee (defined below) or to reimburse Manager for expenses incurred by Manager pursuant to Section 5(b) below which is not cured within ten (10) days after receipt of notice from Manager.

(v)    The failure by Owner to cure a default under this Agreement within fifteen (15) days after receipt of notice from Manager that Owner is in default of any other provision of this Agreement; provided, however, that if such default cannot reasonably be cured within such fifteen (15) day period, the time for Owner to cure such be extended as long as reasonably necessary so long as Owner commences such cure within fifteen (15) days after receipt

2

of notice from Manager that Owner is in default and Owner is diligently pursuing such cure.

(d)     Accounting on Termination.  If this Agreement is terminated, Manager shall be entitled (in addition to any other rights or remedies available to it under this Agreement) to all sums, charges and fees which Manager is entitled to receive under this Agreement, together with costs and expenses reimbursable to it pursuant to Section 5(b) or for which it may be responsible arising out of anything done within the scope of its responsibilities under this Agreement to the date of termination, all as disclosed in the accountings described below.  The amount of all of such sums, charges, fees and costs and expenses shall be ascertained for the period ending on the date of such termination and shall be paid to Manager (a) to the extent ascertained on the date of such termination, on such date, and (b) to the extent not ascertained on the date of such termination, on the date on which such sums, charges, fees and costs and expenses are ascertained after the date of such termination.

(e)     Claims on Termination.  Notwithstanding anything contained in this Agreement, the termination of this Agreement shall not prejudice any cause of action, claim or right of any party accrued or to accrue on account of any default by another party of its obligations under this Agreement or arising as a result of the termination of this Agreement other than in accordance with its terms, and any term, covenant, condition or provision of this Agreement referable thereto shall not merge, but shall survive, the termination of this Agreement.

(f)     Cooperation on Termination.  Each party to this Agreement agrees to cooperate reasonably with the others in connection with the transition of management of the Property upon a termination of this Agreement for any reason.

3.     POWERS AND DUTIES OF MANAGER.  Manager hereby agrees to diligently perform the following services in connection with the management of the Property:

(a)     Budget.  Manager shall prepare an annual budget ("Budget") for the management, care, protection, maintenance, operation and capital improvements of the Property for each calendar year and deliver such proposed Budget to Owner for Owner's approval at least 30 days prior to the beginning of each calendar year except the budget for 2013 shall not be due until February 1, 2013.  Notwithstanding any other provisions of this Agreement, the authority granted to Manager for the expenditure or disbursement of funds, for the making of contracts on behalf of Owner, or for the incurring of liabilities with respect to the management, care, protection, maintenance, and/or operation of the Property, without, in each instance first obtaining the prior specific approval of Owner, shall be limited to (1) the sums set forth in the Budget approved by Owner (the "Approved Budget"), provided that Manager may exceed the sums contained in the Approved Budget by not more than ███████████ per line item and by not more than ███████████ in the aggregate, (2) expenditures of an emergency nature, (3) expenditures required to maintain services to tenants pursuant to lease agreements, (4) expenditures required by any lease agreement, (5) expenditures in the opinion of Manager reasonably required to protect the Property from imminent danger or injury and (6) any itemized expenses costing less than ███████████

3

(b)   Collect Rents.   Manager shall collect promptly all rents and other income of every nature and description, which may become due to the Owner from tenants or occupants of the Property. Nothing herein contained shall constitute a guaranty by Manager of the payment of rent or other obligations of the tenants of the Property.

(c)   Personnel.   Manager agrees on behalf of Owner to hire and discharge and supervise the work of employees who work on-site at the Property (the "Building Employees"). Manager will hire such Building Employees as is necessary for the proper operation and maintenance of the Building, and the compensation paid to the Building Employees in question shall be considered as operating expenses of the Property. In the event that Manager desires to hire any employee(s) not provided for in the then current Budget, Manager shall first confer with and obtain Owner's written consent thereto.

(d)   Repairs and Maintenance.   Manager shall inspect the Property regularly, shall cause the Property to be cleaned, maintained, and repaired in accordance with prudent standards of property maintenance for office buildings of a similar age and class in Philadelphia, PA, and shall effect necessary non-capital repairs, renovations, and alterations to the Property. Manager's responsibilities shall include, without limitation, snow and ice removal, landscape maintenance, cleaning and other necessary repairs and maintenance and the enforcement of related issues.

(e)   Equipment and Supplies.   With respect to equipment, tools, appliances, goods, supplies and materials which shall be reasonably necessary or desirable to perform Manager's duties in accordance with the terms and provisions of this Agreement, including the cleaning, maintenance, upkeep, replacement, refurbishing and preservation of the Property, Manager may do any combination of the following:

(i)   Purchase such equipment, tools and appliances, etc. in the name of Owner and charge the cost thereof to Owner. The items so purchased shall be the property of the Owner and shall not be used on any other property. When making purchases, Manager shall exercise reasonable efforts to obtain the best price available and shall disclose and rebate to Owner all discounts, commissions, or rebates. Such items shall be for the exclusive use of Owner.

(ii)   Rent or lease from Manager or from others such equipment, tools, appliances, etc. to be used at the Property and charge the cost thereof to Owner. Manager shall exercise reasonable efforts to obtain the best rental price available. Such items may be used for the Property and for other property managed by Manager as long as each Property so using such equipment, tools, appliances, etc. pays for its own use thereof.

(iii)   No item costing more than ▮▮▮▮ shall be purchased without Owner's prior consent. No item may be rented or leased for more than ▮▮▮▮ without Owner's prior written consent.

(f)   Utilities and Other Services. Manager shall enter into reasonable and customary contracts, for the supply of extermination, cleaning, mechanical equipment maintenance, common utilities, landscaping, snow plowing, lawn sprinkler maintenance, power sweeping and fire sprinkler alarm and other services or such of them as shall be deemed advisable by Manager in the Owner's name through Manager acting as agent for Owner, and shall use reasonable efforts to provide for the proper supply and functioning thereof.

(g)   Insurance. Manager shall cause insurance to be kept in force of every nature and limits and terms of coverage required by any mortgagees of the Property, including without limitation, public liability insurance and worker's compensation insurance complying with the requirements of Section 6(h) below or such additional coverage as is desired by Owner or required by Owner's mortgagee in the name of Owner and at Owner's expense. Any property damage insurance required hereunder shall contain a clause whereby the insurer waives subrogation or consents to a waiver of the right of recovery against Manager. Premiums for such insurance policies shall be considered operating expenses of the Property. Owner shall be the named insured on such policies, and Manager, any mortgagees of the Property and tenants, if required by their respective leases, shall be named as additional insured on all liability policies. Manager shall promptly investigate and make a full written report to Owner as to all accidents, claims for damage relating to the ownership, operation and maintenance of the Property, and any damage or destruction to the Property and the estimated cost of repair thereof, and shall prepare an and all reports required by any insurance company in connection therewith, and shall thereafter file and process any and all claims for insurance. Manager is authorized to settle and adjust any and all claims for sums not in excess of ▮▮▮▮ however Manager shall not settle any claim(s) which would cause the aggregate of total amount of settlement/adjustments to exceed the sum of ▮▮▮▮ in any given calendar year without first obtaining Owner's written approval. If any given claim is greater than ▮▮▮▮ Manager shall not settle or adjust such claim without the prior approval of Owner.

(h)   Property Records. Manager shall maintain a separate, accurate accounting and full set of books and records for the Property, sufficient, in accordance with prevailing accounting standards, to identify the source of all funds collected by it in its capacity as Manager and the disbursement thereof. Such records shall be kept at the office of Manager at its place of business first set forth above (or as such other location as Manager shall notify Owner of in writing) and shall be available for inspection at all reasonable times by any partner of Owner. To the greatest extent possible Manager shall use computerized accounting and record keeping systems for all financial data related to the Property.

(i)   Reports. As a standard procedure each month during the term of this Agreement, Manager shall render to Owner the following reports, if applicable:

A.   Budget Analysis

5

B.      Balance Sheet

C.      Detailed General Ledger

D.      Cash Flow Report

E.      Open Accounts Payable Report

F.      Check Register

G.      Tenant Status Report

D.      Tenant Aging Report

H.      Vacancy Report

I.      Copies of all banking statements/reports from all accounts in which Owner's funds are maintained by Manager

J.      Monthly Operational Newsletter

(j)     Funds.  Manager shall deposit all funds received by Manager relating to the Property into one or more fully insured bank accounts, under Owner's name, with Philip Rosen and such representatives of the Owner that Owner shall appoint as the only signatories, but Manager will not be held liable in the event of bankruptcy, insolvency or failure of a depository. Manager shall keep a full and accurate record of Owner's accounts and shall establish such account in such a manner as to insulate them from claims against Manager. Manager shall have authority to draw on such accounts and make disbursements from any accounts of any depository as required to perform its obligations hereunder, and Owner will execute any document necessary to affect this paragraph. Manager shall, upon the direction of Owner, pay Owner's partnership distributions generated from the Property to Owner's partners.

(k)     Landlord - Tenant Relations.  Manager shall superintend and regularly monitor Tenant relationships at the Property, with a view toward cultivating and maintaining a good, responsive and mutually harmonious association with each such tenant; to take all necessary and/or advisable steps to enforce lease provisions; to implement the delivery and/or furnishing to tenants of all services required to be delivered and/or furnished by Owner as landlord under the terms of the relevant lease agreements; to apprise Owner promptly of any material problems with particular tenants or tenancies, together with Manager's recommendations for resolving same.

(l)     Compliance with Legal Requirements.  Manager shall use commercially reasonable efforts to comply with any and all laws, rules, regulations, ordinances, orders or requirements affecting the Property by any Federal, State, County or Municipal authority having jurisdiction thereover, and orders of the Board of Fire Underwriters or other similar bodies, including, without limitation, the preparation and filing of any required forms. Manager may, in

6

its discretion, appeal from any requirement it deems unwarranted and it may compromise or settle any dispute regarding such requirements.

(m)   Use and Maintenance of Property.   Manager shall at all times during the term of this Agreement manage, operate and maintain the Property according to the highest standards achievable consistent with the Budget. Manager shall see that all tenants are informed with respect to such rules, regulations, and notices as may be promulgated by Owner, governing bodies and insurance carriers. Manager shall use commercially reasonable efforts to enforce compliance by the tenants with such rules and regulations and with all applicable ordinances, rules and regulations imposed by Owner, governing bodies and insurance carriers.

(n)   Charges and Assessments.   Manager shall timely pay real estate taxes, insurance premiums, water and sewer rents, and other charges or assessments of every nature and description with respect to the Property. Manager, may with Owner's written approval, defend against and seek revision of, or appeal from, any assessment or charge which it deems improper or unreasonable and all such actions may be taken in its name or in the name of Owner. In connection with such actions Manager may, if it deems advisable, employ real estate experts for appraisals and testimony and also, in its discretion, pay any such charges or assessments under protest and seek refunds thereof, and compromise or settle any proceeding or claim with respect thereto which claims are less than ████████.

(o)   Casualty and Eminent Domain.   Manager shall assist Owner in any eminent domain proceedings for the condemnation of the Property or any part thereof or in the prosecution of insurance claims following a fire or other casualty. Manager will make recommendations as to the advisability of compromise or settlement of any such proceedings or claims.

(p)   Construction.   If requested by Owner in writing, Manager shall be responsible to monitor construction at the Property to minimize the disruption of the daily operation at the Property. If requested by Owner in writing, Manager shall be responsible for the timely and proper completion of punchlist items specified by tenants after tenant improvements have been constructed. If requested by Owner in writing, Manager shall also arrange for and/or manage any capital repairs/improvements to the Property, in which case Owner shall pay Manager the Construction Management Fee determined in accordance with Section 5(c) below.

4.   CHARGES.   It is specifically understood that Manager does not undertake to pay any expenses of the Property from its own funds and shall be required to perform the services required by Section 3 above and make disbursements required by Section 3 above only to the extent that, and so long as, payments received from the revenue, if any, of the Property, or from Owner, shall be sufficient to pay the cost and expenses of such services and the amount of such disbursements. If it shall appear to the Manager that such revenues, if any, of the Property are insufficient to pay the same and to adequately fund reserves, the Manager shall so notify the Owner in detail of that fact and request the Owner to provide sufficient funds to pay such costs, expenses and disbursements and Owner shall provide such funds to Manager within ten (10) days after Owner's receipt of Manager's notice.

## 5.     MANAGERS COMPENSATION.

(a)     Fee for Services.   Owner shall pay Manager for its services as Manager under this Agreement, the sum of [REDACTED] of Gross Base Rentals (defined below) ("Management Fee") payable in monthly installments or [REDACTED] per month, whichever is greater. Such Management Fee shall be paid from the funds collected as rents and deposited in Owner's account maintained by Manager.  As used in this Section 5(a), the term "Gross Base Rentals" shall mean all revenue, whether in cash or credit, when collected, from sources derived from the operation of the Property, including, without limitation, the aggregate of all rentals and percentage rentals; provided that notwithstanding anything to the contrary in the foregoing, Gross Base Rentals shall not include (i) any revenue payable to a party other than Owner, (ii) security deposits not taken into revenue, insurance proceeds, condemnation awards or interest or investment income, (iii) capital contributions paid to Owner by Owner's investors, and (iv) proceeds of a sale, refinance or other capital event.  Gross Base Rentals shall be accounted for on a cash basis.

(b)     Reimbursement for Expenses.  In addition to the Management Fee, Owner shall reimburse Manager for costs and expenses reasonably incurred by Manager for Owner's account.  Manager shall be reimbursed for all valid and allowable expenses and disbursements made for the account of Owner in accordance with the terms of this Agreement and the approved Budget promptly after submission of an invoice for the reimbursement.

(c)     Construction Management Fee.  If requested by Owner in writing, Owner agrees to pay Manager a fee (the "Construction Management Fee") for acting as construction supervisor with respect to any tenant improvements, capital improvements or other construction projects for the Property equal to [REDACTED] of the total costs of the construction project, which shall include any portion of any construction project, including, without limitation, capital improvement, and remodeling project if such service is requested by Owner in writing.

## 6.     LIABILITY INSURANCE AND INDEMNIFICATION.

(a)     Exculpation.  If either party is a partnership, trust, limited liability company or corporation, no general or limited partner of such partnership, trustee or beneficiary of any trust, member of an limited liability company, or shareholder of a corporation, shall be personally liable to the other party to this Agreement except for the bad faith, gross negligence, willful misfeasance or criminal conduct of such individual.

(b)     Owner's Insurance Policies.  Owner shall maintain, at its own expense, the following insurance coverages:

(i)     Special Cause of Loss Property insurance, and builder's risk insurance, where applicable, to cover physical loss or damage to the Property from fire and extended coverage perils, including vandalism and malicious mischief.

(ii)     Commercial General Liability insurance (ISO CG 00 01- current version available) with respect to the Property covering third-party bodily injury, property

8

Case ID: 180200624

damage, and personal injury with minimum limits of Five Million Dollars ($5,000,000.00) per occurrence and a general aggregate limit of Five Million Dollars ($5,000,000.00). These limits may be obtained through a combination of primary and excess insurance. All such insurance shall include Manager as named insured thereunder.

All of Owner's insurance required hereunder shall be in force as of the date of this Agreement. Owner shall furnish Manager, prior to the date of this Agreement certificates of insurance evidencing Owner's insurance coverage as required under Section 5(b) above, including evidence that Manager will be given at least thirty (30) days' prior written notice of cancellation or any material change in coverage. All such policies shall be at Owner's sole cost, and the Commercial General Liability policy shall name Manager and Manager's affiliates as additional insureds. The insurance carriers for each line of coverage must have a minimum A. M. Best Rating of "A-VII". Any deductible above _____ must be approved in writing by Manager. In cases where Owner and Manager maintain insurance policies that duplicate coverage, then Owner's policies shall provide primary coverage, except as provided below in Section 5(d).

Manager shall promptly investigate and make a full written report as to all accidents or claims for damage relating to the ownership, operation and maintenance of the Property, including any damage or destruction to the Property and the estimated cost of repair, and shall cooperate and make any and all reports required by an insurance company in connection therewith. All general public liability and other liability policies carried by or for Owner shall name Owner and Manager as insureds.

(c)    Manager's Insurance Coverage.   Manager shall maintain the following insurance coverage:

| Insurance | Minimum Standards |
|---|---|
| Workers' Compensation | Coverage A: Minimum limits required by Statute (with proof of compliance as acceptable to Owner) ....... |
| | Coverage B: $100,000 Bodily Injury by Accident (Each Accident) $500,000 Bodily Injury by Disease (Policy Limit) $100,000 Bodily Injury by Disease (Each Employee) $500,000 Employer's Liability (Each Accident) Said policy shall provide a waiver of subrogation in favor of Owner |

| | |
|---|---|
| Commercial General Liability Insurance | $1,000,000 per occurrence<br>$2,000,000 in the aggregate |
| Automobile, Single Limit Bodily Injury and Property Damage (to the extent Manager owns a vehicle) | $1,000,000 |
| Uninsured Motorists | As required by Statute |
| Umbrella Liability | $5,000,000 |
| Property Managers Errors & Omissions | $1,000,000 Per Claim<br>$1,000,000 Annual Aggregate |
| Crime (or Fidelity Bond) coverage, protecting the Manager, Owner, and Owner's Affiliates against fraudulent or dishonest acts of Manager's employees, including Forgery or Alteration. | $1,000,000 Per Loss |

All insurance required hereunder shall be in force as of the date of this Agreement. Manager shall furnish Owner, prior to the date of this Agreement, certificates of insurance evidencing Manager's insurance coverage as required under Section 5(c) above, including evidence that Owner will be given at least thirty (30) days' prior written notice of cancellation or any material change in coverage. All such policies, except for workers' compensation for Manager's employees directly involved with the operation of the Property shall be at Manager's sole cost and shall include Owner and Owner's affiliates as additional insureds (except for the fidelity policy(ies) as to which Owner and Owner's affiliates shall be named as loss payees.) The insurance carriers for each line of coverage must have a minimum A. M. Best Rating of "A-VII." Any deductible above $50,000 must be approved in writing by Owner. In cases where Owner and Manager maintain insurance policies that duplicate coverage, then Owner's policies shall provide primary coverage, except as provided below in Section 5(d).

(d)    Primary Coverage. The policies of insurance required to be purchased by Owner under this Agreement shall be primary with respect to the public liability risks relating to the Property, provided, however, that where loss occurs that is subject to the indemnification by the Manager contained in Section 5(f) below, the applicable insurance policies that Manager is hereunder required to purchase and maintain shall become primary.

(e)    Contractor's and Subcontractor's Insurance. Manager shall require that each contractor and subcontractor hired to perform work at the Property maintain insurance against risk of physical damage to personal property belonging to it in amounts sufficient to replace such personal property in the event of loss, and insurance coverage at such contractor's and/or subcontractor's expense, in the following minimum amounts:

| Insurance | Minimum Standards |
|---|---|

10

Case ID: 180200624

| Workers' compensation | As required by law |
| Employer's liability | $500,000 |
| Commercial general liability* | $1,000,000 |
| Commercial auto liability* | $1,000,000 |
| Umbrella liability | $5,000,000 |

*These coverages shall be primary and will respond to any allegation, claim, loss, damage, demand or judgment, or other causes of action arising out of work done in, on or to the Property by the contractor or subcontractor on behalf of Owner and Manager. Owner, Owner's affiliates and Manager shall be named as additional insureds on such policies with respect to ongoing operations and completed operations. The additional insured status under the CGL insurance shall be effected using the ISO Additional Insured Endorsement form CG 20 10 10 93 and CG 20 37 10 01 or such other endorsement or combination of endorsements providing coverage at least as broad and approved by the Owner in writing. The per occurrence and aggregate coverage limits of at least the amounts set forth above shall be specific to the Property and apply separately to the work of the applicable contractor or subcontractor under such contractor's or subcontractor's contract relating to the Property. The policies shall be written on an "an occurrence" basis.

(f)    Subrogation and Indemnity.

(i)    Any insurance which is procured and maintained and which in any way is related to the Property or the authorized activities therewith, is for the sole benefit of the party securing such insurance and others named as insured, and Manager and Owner hereby release each other from all rights of recovery under or through subrogation or otherwise for any loss or damage to the extent of such insurance coverage.

(ii)    Owner and Manager hereby waive against the other any and all claims and demands of whatsoever nature for damages, loss of use, including business income, or injury to the other's property in, upon or about the Property, except for claims and demands arising out of the gross negligence or willful misconduct of Owner, Manager or their respective agents, employees, officers, or contractors. The foregoing waiver shall not limit Owner's obligation to pay Manager the Management Fee, Construction Management Fee and reimbursement of expenses pursuant to Section 5(b), nor shall such waiver limit the parties' respective indemnity obligations set forth in this Agreement.

(iii)    Owner hereby indemnifies and holds Manager and its Affiliates and any of their respective partners, members, officers, employees, consultants, agents and representatives (collectively, the "Manager Indemnified Parties") harmless from and against any and all liabilities, fines, suits, claims, obligations, damages, penalties, demands, actions, costs and expenses of any kind or nature (including, without limitation, reasonable legal fees) arising out of any action or omission or course of action on the part of a Manager Indemnified Party in the performance of its obligations under this Agreement or otherwise in connection with any obligation incurred by, or instrument executed by, a Manager Indemnified Party alone, a Manager Indemnified Party together with Owner or by Owner alone, whether or not a Manager Indemnified Party shall be the signatory or one of the signatories on behalf of Owner and

11

whether incurred or executed on behalf of Owner; provided that this indemnity shall not apply to any liabilities, fines, suits, claims, obligations, damages, penalties, demands, actions, costs and expenses to the extent resulting from the willful misconduct or gross negligence of a Manager Indemnified Party.

(iv)   Manager hereby indemnifies and holds Owner and its members, officers, employees, consultants, agents and representatives harmless from and against any and all liabilities, fines, suits, claims, obligations, damages, penalties, demands, actions, costs and expenses of any kind or nature (including, without limitation, reasonable legal fees) arising out of or caused by the willful misconduct or gross negligence of Manager.

(g)   Toxic Waste Indemnification.   Owner agrees to indemnify, defend and hold Manager and its officers, employees and agents harmless from any claims, judgments, damages, penalties, fines, costs, liabilities (including sums paid in settlements of claims) or loss, including but not limited to, court costs and reasonable attorney's fees, consultant fees, and expert fees which arise during or after the term of this Agreement, from or in connection with the presence or suspected presence of toxic or hazardous substances at the Property or the land upon which the Property is constructed or which is appurtenant to it and which is owned by Owner. Without limiting the generality of the foregoing, the indemnification provided by this paragraph shall specifically cover costs incurred in connection with any investigation of site conditions or any clean-up, including studies or reports as needed or required, and remedial, removal or restoration work required by a federal, state, or local governmental agency or political subdivision because of the presence of toxic or hazardous substances in the soil, groundwater or soil vapor on or under the Property, unless the toxic or hazardous substances are present solely as a result of the negligence or willful misconduct of Manager, its officers, employees, or agents. Without limiting the generality of any of the foregoing, the indemnification provided by this Paragraph shall also specifically cover costs incurred in connection with:

(i)   toxic or hazardous substances present or suspected to be present in the soil, groundwater or soil vapor in or under the Property before the Term of this Agreement commences; or

(ii)   toxic or hazardous substances that migrate, flow, percolate, diffuse, or in any way move onto or under the Property after the Term of this Agreement commences; or

(v)   toxic or hazardous substances present on or under the Property as a result of any discharge, dumping, spilling (accidental or otherwise) onto the Property, during or after the Term of this Agreement by any person, corporation, partnership, or entity other than Manager.

7.   COMMITMENT OF MANAGER.   Manager shall be required to devote only such time as may be required for the good and proper management of the Property. Notwithstanding the foregoing, Manager shall be at liberty to manage Property for the account of other Owners and to engage in the same or other business for its own account or as agent or contractor for others without being in violation of the terms of this Agreement. Manager acknowledges and agrees that it has fiduciary obligation to Owner upon the execution hereof, and Manager waives and relinquishes any previous fiduciary obligations to any previous Owners

17.

Case ID: 180200624

of the Property. Manager shall keep all information confidential with respect to the Property, except as is necessary to disclose in the normal course of managing the Property and shall direct all questions of a confidential nature directly to the Owner.

8.   **NOTICES.**  Any notices from one party to the other shall be sent by way of facsimile with a copy to be sent prepaid a recognized overnight delivery service or shall be hand-delivered, and such notices shall be addressed to the parties at the addresses first above stated, or such other addresses of which the parties shall give written notice from time to time. Notices sent by prepaid overnight delivery service shall be deemed given on the day of delivery as evidenced by the courier's delivery receipt.

9.   **INVALIDITY OF PARTICULAR PROVISIONS.**  If any term or provisions of this Agreement, or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

10.   **MISCELLANEOUS.**  All of the covenants and agreements contained in this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives. This Agreement and any of Manager's or Owner's respective obligations hereunder or their respective right, title or interest hereunder, shall not be sold, transferred, assigned, pledged or delegated by Manager or Owner without the express prior written consent of the other party hereto. This Agreement contains the entire agreement of the parties and may not be modified except by an instrument in writing signed by both parties. This Agreement shall be governed by, and enforced under, the laws of the Commonwealth of Pennsylvania, and all legal proceedings brought under or with respect to this Agreement shall be brought in the federal or state courts sitting in Philadelphia, Pennsylvania. No waiver, express or implied, by either party of any breach of any covenant, agreement or duty contained in this Agreement shall ever be held or construed to be a waiver of any other breach of the same or of any other covenant, agreement or duty. Titles of the paragraphs herein have been inserted as a matter of convenience of reference only and shall not control or affect the meaning or construction of any of the terms and provisions hereof.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement under seal of the first date above written.

13



**OWNER:**

By: _____
    Name: ALLAN DAVIS
    Title:

Attest: _____
    Name:
    Title:

**MANAGER:**

**SSH MANAGEMENT, LLC**

By: _____

Name: _____

Its: _____

Case ID: 180200624

EXHIBIT "D"

# Nautilus Insurance Company®
## An Arizona Corporation  *a W. R. Berkley Company*

## **COMMERCIAL LINES POLICY**

**THIS POLICY IS NOT OBTAINED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

THIS POLICY CONSISTS OF:

- Declarations;
- Common Policy Conditions; and
- One or more Coverage Parts.  A Coverage Part consists of:
    - One or more Coverage Forms; and
    - Applicable Forms and Endorsements.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____          _____
Secretary                                                     President and CEO

7233 E. Butherus Drive      Scottsdale, Arizona 85260      Telephone (480) 951-0905      Facsimile (480) 951-9730

E001J (02/14)

(Page 1 of 2)

COMMERCIAL LINES POLICY - COMMON POLICY DECLARATIONS

# NAUTILUS INSURANCE COMPANY
Scottsdale, Arizona

**Transaction Type:** New

Renewal of Policy # _____
Rewrite of Policy # _____
Cross Ref. Policy # _____
NIC Quote # _____

Inspection Ordered:
☐ Yes  ☒ No

**Policy No.** NN687620

THE INSURER WHICH HAS ISSUED THIS INSURANCE IS NOT LICENSED BY THE PENNSYLVANIA  INSURANCE DEPARTMENT AND IS SUBJECT TO LIMITED REGULATION.  THIS INSURANCE IS NOT COVERED BY THE PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION.  PLACED BY PENNOCK INSURANCE INC., 2 CHRISTY DRIVE, STE 100, CHADDS FORD, PA 19317

**Named Insured and Mailing Address**
(No., Street, Town or City, County, State, Zip Code)
Marquis & Co., LLC t/a HipCityVeg HCV 12
    Marquis HCV Holdings, LLC
127 S Broad Street

Philadelphia          PA    19103

**Agent and Mailing Address**       **Agency No.** 3770100
(No., Street, Town or City, County, State, Zip Code)
PENNOCK INSURANCE, INC.
2 CHRISTY DRIVE
STE 100
Chadds Ford          PA    19317

**Policy
Period:** From 06/13/2016   to  12/13/2016   at 12:01 A.M. Standard Time at your mailing address shown above.

NO FLAT CANCELLATION

**Business Description:** VACANT BUILDING UNDER RENOVATION          **Tax State** PA

**Form of Business:** Limited Liability Company

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE WILL PROVIDE YOU THE INSURANCE STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Commercial General Liability Coverage Part | $ 2,222.00 |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |

| Tax & Fee Schedule | | TOTAL ADVANCE PREMIUM | $ 2,222.00 |
|---|---|---|---|
| Policy Fee | $ 125.00 | Minimum & Deposit | |
| Surplus Lines Tax | 66.66 | | |
| Stamping Fee | 25.00 | TOTAL TAXES & FEES | $ 216.66 |
| | | **TOTAL** $ | 2,438.66 |

Form(s) and Endorsement(s) made a part of this policy at time of issue:
**Refer to Schedule of Forms and Endorsements.**

1210-NN687620-16

Countersigned: Chadds Ford,PA
                06/23/2016   LH
                             CK

By _____

Countersignature or Authorized Representative, whichever is applicable

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

E001 (02/14)

POLICY NUMBER: NN687620

Named Insured: Marquis & Co., LLC t/a HipCityVeg HCV 121 S Broad, LLC, a PA LLC
Marquis HCV Holdings, LLC

## SCHEDULE OF FORMS AND ENDORSEMENTS

COMMON POLICY

| | | |
|---|---|---|
| E001 | (02/14) | Nautilus Insurance Company Common Policy Declarations |
| E001J | (02/14) | Nautilus Insurance Company Commercial Lines Policy Jacket |
| IL0017 | (11/98) | Common Policy Conditions |
| E915 | (07/13) | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders |
| S013 | (07/09) | Minimum Earned Premium Endorsement |

STATE

| | | |
|---|---|---|
| E906PA | (01/16) | Service Of Suit - Pennsylvania |
| IL0246 | (07/02) | Pennsylvania Changes - Cancellation And Nonrenewal |
| IL0910 | (12/03) | Pennsylvania Notice |

COMMERCIAL GENERAL LIABILITY

| | | |
|---|---|---|
| S150 | (07/09) | Commercial General Liability Coverage Part Declarations |
| CG0001 | (12/04) | Commercial General Liability Coverage Form (Occurrence Version) |
| CG0067 | (03/05) | Exclusion - Violation of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material Or Information |
| CG2011 | (01/96) | Additional Insured - Managers or Lessors of Premises |
| CG2107 | (05/14) | Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability - Limited Bodily Injury Exception Not Included |
| CG2109 | (06/15) | Exclusion - Unmanned Aircraft |
| CG2147 | (07/98) | Employment-Related Practices Exclusion |
| CG2173 | (01/15) | Exclusion of Certified Acts of Terrorism |
| CG2196 | (03/05) | Silica or Silica-Related Dust Exclusion |
| CG2280 | (04/13) | Limited Exclusion - Contractors - Professional Liability |
| IL0021 | (09/08) | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| L201 | (07/10) | Exclusion - Exterior Insulation and Finish Systems (EIFS) |
| L205 | (11/10) | Exclusion - Injury To Employees, Contractors, Volunteers and Other Workers |
| L216 | (07/09) | Amendment of Definitions - Insured Contract (Limited Form) |
| L217 | (06/07) | Exclusion - Punitive or Exemplary Damages |
| L223 | (06/07) | Exclusion - Total Pollution |
| L238 | (06/07) | Exclusion - Toxic Metals |

The forms and endorsements shown on this Schedule constitute the entire policy at the time of issuance.

POLICY NUMBER: NN687620

Named Insured: Marquis & Co., LLC t/a HipCityVeg HCV 121 S Broad, LLC, a PA LLC
Marquis HCV Holdings, LLC

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| L241 | (07/09) | Exclusion - Microorganisms, Biological Organisms, Bioaerosols or Organic Contaminants |
| L288 | (01/15) | Additional Conditions and Exclusions - Contractors Subcontracted Work |
| L335 | (10/15) | Exclusion - Construction Operations in Colorado or New York |
| L408 | (03/12) | Changes - Civil Union Or Domestic Partnership |
| L601 | (12/09) | Amendment of Conditions - Premium Audit |
| L850 | (05/09) | Deductible Liability Insurance (Including Allocated Loss Adjustment Expense) |
| S038 | (07/09) | Amendment of Liquor Liability Exclusion |
| S261 | (07/09) | Exclusion - Asbestos |

The forms and endorsements shown on this Schedule constitute the entire policy at the time of issuance.

**IL 00 17 11 98**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

# U.S. TREASURY DEPARTMENT'S
# OFFICE OF FOREIGN ASSETS CONTROL (OFAC)
# ADVISORY NOTICE TO POLICYHOLDERS

## PLEASE READ THIS NOTICE CAREFULLY.

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of national emergency. OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorist organizations and narcotics traffickers as Specially Designated Nationals. This list can be located on the United States Treasury's web site:  http://www.treasury.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

       Includes copyrighted material of Insurance Services Office, Inc., with its permission.

POLICY NUMBER:  NN687620

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MINIMUM EARNED PREMIUM ENDORSEMENT

If this policy is cancelled at your request, there will be a minimum earned premium retained by us of $ _____ or 50 % of the premium for this insurance, whichever is greater.

Non-payment of premium is considered a request by the first Named Insured for cancellation of this policy.

If a policy fee, inspection fee or expense constant is applicable to this policy, they will be fully earned and no refund will be made.

All other terms and conditions of this policy remain unchanged.

# SERVICE OF SUIT – PENNSYLVANIA

It is agreed that in the event of the failure of the Insurer(s) or Underwriter(s) herein to pay any amount claimed to be due hereunder, the Insurer(s) or Underwriter(s) herein, at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court.  It is further agreed that in any such action instituted against any one of them upon this contract, Insurer(s) or Underwriter(s) will abide by the final decision of such court or of any appellate court in the event of an appeal. Nothing herein shall foreclose, limit, or constitute a waiver of, any of the Insurer's or Underwriter's rights to select a forum or court, including any of the federal courts of the United States.

Service of process shall be made pursuant to the procedures provided by 42 Pa.C.S. Ch. 53 Subch. B (relating to interstate and international procedure).  When making service of process by mail, such process shall be mailed to Janet Shemanske, or her nominee, at Nautilus Insurance Company, 7233 East Butherus Drive, Scottsdale, Arizona 85260. The above-named is authorized and directed to accept service of process on behalf of the Insurer(s) or Underwriter(s) in any such action or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that it or they will enter a general appearance for the Insurer(s) or Underwriter(s) in the event such an action shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provisions therefor, the Insurer(s) or Underwriter(s) hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as the true and lawful attorney upon whom any lawful process may be served in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of his contract of insurance (or reinsurance), and hereby designates the above-named as the person on whom such process or a true copy thereof shall be served.

E906PA (01/16)

IL 02 46 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation Of Policies In Effect For Less Than 60 Days**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation Of Policies In Effect For 60 Days Or More**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   **a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   **b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   **c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   **d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   **e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**4.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** The following are added and supersede any provisions to the contrary:

**1. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**2. Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2001

IL 02 46 07 02   □

IL 09 10 12 03

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

**IL 09 10 12 03**                © ISO Properties, Inc.,  2003                **Page 1 of 1**    □

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

POLICY NUMBER: NN687620

☐ Extension of Declarations is attached.                    Effective Date: 06/13/2016    12:01 A.M. Standard Time

| **LIMITS OF INSURANCE**        ☐ If box is checked, refer to form **S132** Amendment of Limits of Insurance. | | |
|---|---|---|
| General Aggregate Limit (Other Than Products/Completed Operations) | $ 3,000,000 | |
| Products/Completed Operations Aggregate Limit | $ 3,000,000 | |
| Personal and Advertising Injury Limit | $ 1,000,000 | Any One Person Or Organization |
| Each Occurrence Limit | $ 1,000,000 | |
| Damage To Premises Rented To You Limit | $ 100,000 | Any One Premises |
| Medical Expense Limit | $ 5,000 | Any One Person |

## RETROACTIVE DATE (CG 00 02 ONLY)

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" which occurs before the Retroactive Date, if any, shown here:          (Enter Date or "NONE" if no Retroactive Date applies)

## BUSINESS DESCRIPTION AND LOCATION OF PREMISES

BUSINESS DESCRIPTION: VACANT BUILDING UNDER RENOVATION

LOCATION OF ALL PREMISES YOU OWN, RENT, OR OCCUPY: ☐ Location address is same as mailing address.

   121 S. BROAD STREET, Philadelphia, PA 19103
1

Additional locations (if any) will be shown on form **S170**, Commercial General Liability Coverage Part Declarations Extension.

LOCATION OF JOB SITE  (If Designated Projects are to be Scheduled):

| CODE # – | CLASSIFICATION | * | PREMIUM BASIS | RATE Prem/Ops | RATE Prod/Comp Ops | ADVANCE PREMIUM |
|---|---|---|---|---|---|---|
| 90691 – | Vacant Buildings – Undergoing Renovation or Remodeling | a+ | 545 | 450.396 | Included | 122 Included |
| 91581 – | Contractors – subcontracted work in connection with construction, reconstruction, erection or repair – not buildings NOC | c | 500,000 | 1.000 | 7.399 | 250 1,850 |
| 49950 – | CG2011 – Managers Or Lessors Of Premises | t | 2 | Included | | Included |
| – | | | | | | |

| * **PREMIUM BASIS SYMBOLS**      **+** = Products/Completed Operations are subject to the General Aggregate Limit | |
|---|---|
| **a** = Area  (per 1,000 sq. ft. of area) | **o** = Total Operating Expenditures                    **s** = Gross Sales (per $1,000 of Gross Sales) |
| **c** = Total Cost  (per $1,000 of Total Cost) | (per $1,000 Total Operating Expenditures)   **t** = See Classification |
| **m** = Admissions  (per 1,000 Admissions) | **p** = Payroll  (per $1,000 of Payroll)      **u** = Units  (per unit) |

PREMIUM FOR THIS COVERAGE PART  $ 2,222      MP

## FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:
**Refer to Schedule of Forms and Endorsements**

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

S150 (07/09)

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2003

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

   (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

   (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

   (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

   (i) Any insured; or

   (ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

   (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

   (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

   (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2003

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2003

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

© ISO Properties, Inc., 2003

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

 © ISO Properties, Inc., 2003  □

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insured for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

    **a.** Medical expenses under Coverage **C;**

    **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under Coverage **A;** and

    **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

 © ISO Properties, Inc., 2003   □

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

 © ISO Properties, Inc., 2003   □

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless The injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

© ISO Properties, Inc., 2003

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

 © ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

   "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

   **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

   **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

   **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

   "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

   **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

   **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

   **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

POLICY NUMBER: NN687620

**COMMERCIAL GENERAL LIABILITY**
CG 20 11 01 96

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**1.** Designation of Premises (Part Leased to You):

121 S. BROAD STREET
PHILADELPHIA, PA 19103

**2.** Name of Person or Organization (Additional Insured):

ADR NORTH AMERICA, LP & SSH MANAGEMENT, LLC
123 S. BROAD STREET  #850
PHILADELPHIA, PA 19109

**3.** Additional Premium: Included

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section **II**) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

**CG 20 11 01 96**          Copyright, Insurance Services Office, Inc., 1994          **Page 1 of 1**    □

COMMERCIAL GENERAL LIABILITY
CG 21 07 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Copyright, Insurance Services Office, Inc., 2013

COMMERCIAL GENERAL LIABILITY
CG 21 09 06 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

© Insurance Services Office, Inc., 2014

(e) "Bodily injury" or "property damage" arising out of:

(i) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(ii) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Unmanned Aircraft**

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

**a.** The use of another's advertising idea in your "advertisement"; or

**b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to the **Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

 © Insurance Services Office, Inc., 2014 **CG 21 09 06 15**

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

 Copyright, ISO Properties, Inc., 2015

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

COMMERCIAL GENERAL LIABILITY
CG 22 80 04 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you, but only with respect to your providing engineering, architectural or surveying services in your capacity as an engineer, architect or surveyor.

Professional services include:

1. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

2. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you with respect to your providing engineering, architectural or surveying services in your capacity as an engineer, architect or surveyor.

This exclusion does not apply to your operations in connection with construction work performed by you or on your behalf.

Copyright, Insurance Services Office, Inc., 2012

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 **IL 00 21 09 08** □

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS (EIFS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is **added** to **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement of any "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashing, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

However, this exclusion does not apply to cementitious stucco consisting of portland cement or fiber-reinforced portland cement, sand, lime, color and water.

**B.** The following definition is **added** to the **Definitions** section:

"Exterior insulation and finish system" means a synthetic non-load bearing exterior cladding or finish system including, but not limited to, polymer based (PB) or polymer modified (PM) systems, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene or other materials; and

**2.** The adhesive or mechanical fasteners used to attach the insulation board to the substrate; and

**3.** A reinforced or unreinforced base coat; and

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

All other terms and conditions of this policy remain unchanged.

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS AND OTHER WORKERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **e. Employer's Liability** of **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

**e.  Injury to Employees, Contractors, Volunteers and Other Workers**

"Bodily injury" to:

**(1)** "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or

**(2)** Any insured's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors

arising out of and in the course of:

**(a)** Employment by any insured; or

**(b)** Directly or indirectly performing duties related to the conduct of any insured's business; or

**(3)** The spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractors, or independent contractor arising out of Paragraph **(1)** or **(2)** above.

This exclusion applies:

**(1)** Regardless of where the:

**(a)** Services are performed; or

**(b)** "Bodily injury" occurs; and

**(2)** Whether any insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** Exclusion **a. Any Insured** of **2. Exclusions** of **Section I - Coverage C - Medical Payments** is **replaced** by the following:

We will not pay expenses for "bodily injury":

**a.  Any Insured**

To any insured.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF DEFINITIONS - INSURED CONTRACT
## (Limited Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

Definition **9.** "insured contract" of the **Definitions** section is **replaced** by the following:

**9.**   "Insured contract" means any written:

**a.**   Contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" to premises while rented or loaned to you, or temporarily occupied by you with permission of the owner, is not an "insured contract";

**b.**   Sidetrack agreement;

**c.**   Easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.**   Obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.**   Elevator maintenance agreement; or

**f.**   Part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

**a.**   That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**b.**   That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(1)**  Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs, drawings, or specifications; or

   **(2)**  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**c.**   Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **b.(1)** or **b.(2)** above and supervisory, inspection, architectural or engineering activities; or

**d.**   That indemnifies any person or organization for "bodily injury" or "property damage" arising from the ownership, maintenance, or use of any aircraft.

All other terms and conditions of this policy remain unchanged.

L216 (07/09)         Includes copyrighted material of Insurance Services Office, Inc., with its permission

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES

This endorsement modifies insurance provided under the following:

>   COMMERCIAL GENERAL LIABILITY COVERAGE PART
>   LIQUOR LIABILITY COVERAGE PART
>   OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
>   PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following exclusion is **added** to **2. Exclusions** of **Section I:**

>   This insurance does not apply to punitive or exemplary damages.

All other terms and conditions of this policy remain unchanged.

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - TOTAL POLLUTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **f. Pollution** of **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

**f.   Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of any authority, governmental or otherwise, for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants"; or

**(c)** Requirements by Environmental Protection Agency (EPA) 40 CFR Parts 280 and 281 for underground storage tanks, Comprehensive Environmental Response Compensation and Liability Act (CERCLA) or any similar State or Federal environmental act(s).

**B.** The definition of "Pollutants" in the **Definitions** section is **replaced** by the following:

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

All other terms and conditions of this policy remain unchanged.

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - TOXIC METALS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is **added** to **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury** and **Coverage C - Medical Payments**:

This insurance does not apply to:

**1.** "Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of direct or indirect contact with, any exposure to, or the ingestion, inhalation, or absorption of any "toxic metals" in any form; or

**2.** Any loss, cost, or expense arising out of any:

**a.** Request, demand, order, or requirement by or on behalf of any authority, governmental or otherwise, that any insured or others abate, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any "toxic metals"; or

**b.** Claim or "suit" by or on behalf of any authority, governmental or otherwise, for damages because of abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any "toxic metals".

We will have no duty to investigate, defend or indemnify any insured in any action or proceeding alleging damages arising out of direct or indirect contact with, any exposure to, or the ingestion, inhalation, or absorption of any "toxic metals" in any form.

**B.** For the purpose of this endorsement, the following definitions are **added** to the **Definitions** section:

**1.** "Toxic metals" are individual metals and metal compounds that negatively affect people's health.  "Toxic metals" include, but are not limited to, arsenic, beryllium, "heavy metals", or hexavalent chromium.

**2.** "Heavy metals" are a group of elements between copper and bismuth on the periodic table of the elements having specific gravities greater than 4.0.  "Heavy metals" include, but are not limited to, cadmium, cobalt, copper, lead, manganese, mercury, molybdenum, strontium, vanadium, or zinc.

All other terms and conditions of this policy remain unchanged.

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - MICROORGANISMS, BIOLOGICAL ORGANISMS, BIOAEROSOLS OR ORGANIC CONTAMINANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusions are **added** to **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**, **Coverage B - Personal And Advertising Injury Liability** and **Coverage C - Medical Payments**:

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury", or medical payments arising out of, related to, caused by or in any way connected with the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

2. Any loss, cost or expense arising out of any:

   **a.** Request, demand, order, or requirement by or on behalf of any authority, governmental or otherwise, that any insured or others abate, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, remediate or dispose of, or in any way respond to, or assess the effects of microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast, or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion; or

   **b.** Claim or "suit" by or on behalf of any authority, governmental or otherwise, for damages because of abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast, or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend, or indemnify any insured in any action or proceeding alleging damages arising out of direct or indirect contact with, any exposure to, or the ingestion, inhalation or absorption of any microorganisms, biological organisms, bioaerosols, or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

This exclusion does not apply to any fungi, bacteria, microorganisms or biological organisms that are, are on, or are contained in, a good or product intended for bodily consumption.

All other terms and conditions of this policy remain unchanged.

             Includes copyrighted material of Insurance Services Office, Inc., with its permission.

POLICY NUMBER: NN687620

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL CONDITIONS AND EXCLUSIONS - CONTRACTORS SUBCONTRACTED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** The Contractors - Subcontracted Work classification(s) shown in the Declarations applies to that portion of the operations performed for you by your "adequately insured" contractors or "adequately insured" subcontractors.

**B.** The following is **added** to **Section IV - Commercial General Liability Conditions:**

**1.** You will obtain and maintain Certificates of Insurance from all "adequately insured" contractors or "adequately insured" subcontractors you hire providing evidence of Commercial General Liability insurance, including products/completed operations insurance.

Your failure to obtain the certificates of insurance from "adequately insured" contractors or "adequately insured" subcontractors will not invalidate the insurance provided by this policy or relieve us of our obligation to you under the terms of this policy except as stated in **5**. **Premium Audit** of **Section IV - Commercial General Liability Conditions.**

**2.** If, at any time, it is verified that operations were performed during the policy term by contractors or subcontractors that were not "adequately insured", such contractors or subcontractors will be classified and rated under the specific classification assignable to contracting risks performing such operations in accordance with paragraph **C.** below.

**C.** The following is **added** to **5. Premium Audit** of **Section IV - Commercial General Liability Conditions:**

If we verify operations were performed by contractors or subcontractors you hired were not "adequately insured" as defined in paragraph **D.1.** of this endorsement whether by audit of your books and records or otherwise, we will use the "total cost" of work performed for you by such contractors or subcontractors as if it were payroll to calculate the appropriate premium for the specific classification based on our rates and rules in effect as of the inception date of the policy. It is your responsibility to pay any additional premium due.

**D.** The following definitions are **added** to the **Definitions** section:

**1.** "Adequately insured" means that the contractors and subcontractors that perform operations for you maintain Commercial General Liability insurance in force with the following minimum limits of insurance for their operations, including operations performed for them by others:

| | |
|---|---|
| General Aggregate Limit (Other than Products/Completed Operations) | $ 2,000,000 |
| Products/Completed Operations Aggregate Limit | $ _____ |
| Each Occurrence Limit | $ 1,000,000 |
| Personal and Advertising Injury Limit | $ _____ |

(If no entry appears above, the minimum limits of insurance will be equal to the limits of insurance shown in the Declarations).

**2.** "Total cost" means the total cost of all work let or sublet in connection with each specific project including:

**a.** The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work including the cost of finished equipment installed whether or not furnished by the contractor, subcontractor, or by you; and

**b.** All fees, bonuses or commissions made, paid or due.

All other terms and conditions of this policy remain unchanged.

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CONSTRUCTION OPERATIONS
# IN COLORADO OR NEW YORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is **added** to **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability** and **Coverage C - Medical Payments:**

This insurance does not apply to:

**1.** "Bodily injury", "property damage", "personal and advertising injury", or medical payments arising out of any ongoing "construction operations" or "your work" included in the "products-completed operations hazard" performed by or on behalf of any insured in the State of Colorado or the State of New York.

**2.** Costs and expenses to investigate or defend any claim or "suit" or payment of any fine or penalty for paragraph **A.1.** above.

**B.** With regard to paragraph **A.** above, exclusion **b. Contractual Liability** of **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

**b. Contractual**

**(1)** "Bodily injury", "property damage", "personal and advertising Injury", and medical payments for which any insured may be obligated to pay damages by reason of the assumption of liability in any contract or agreement, regardless of whether such contract or agreement is an "insured contract"; or

**(2)** Any obligation to share damages with or repay someone else who must pay damages.

**C.** The following definitions are **added** to the **Definitions** section:

**1.** "Construction" means the act of building by putting together materials and parts to create a structure including, but not limited to, building the foundations, framework, floors, walls, ceilings, trusses or roof, or debris removal.

**2.** "Construction operations" means, with respect to real property, surveying, site preparation, grading of land, excavation, debris removal, soil compaction, tree clearing, demolition, reconstruction, renovation, alteration, remodeling, repair, service, improvement and any other "pre-construction" and any other "construction" and any other "post-construction".

**3.** "Post-construction" means those activities that occur after the issuance of the notice of completion or certificate of occupancy, whichever comes first.

**4.** "Pre-construction" means those activities that must occur prior to the actual start of the "construction" process including, but not limited to, grading of land, inspection, land surveying, site preparation, soil compaction, tree clearing, or installation of driveways, parking areas, roads, sidewalks, and utilities.

All others terms and conditions remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CHANGES – CIVIL UNION OR DOMESTIC PARTNERSHIP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

All references to spouse shall include an individual who is a party to a civil union or is in a domestic partnership recognized under state law, where applicable.

All other terms and conditions remain unchanged.

L408 (03/12)                    Includes copyrighted material of Insurance Services Office, Inc., with its permission.

POLICY NUMBER: NN687620                                    **COMMERCIAL GENERAL LIABILITY**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF CONDITIONS - PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** The Premium Audit Condition under **Section IV - Conditions** is **replaced** by the following:

**Premium Audit**

**1.** We will compute all premiums for this Coverage Part in accordance with our rules and rates. Premium shown in this Coverage Part as advance premium is a minimum and deposit premium.

The rates for each classification shown in the Declarations are multiplied by the estimated premium bases of that classification for the term to determine the advance premium.

We may conduct an audit of your books to determine the actual premium bases developed during the policy period. To calculate the actual premium developed during the policy period we will use one, or a combination, of the following premium bases: payroll, admissions, gross sales, total cost, area, each exposure unit, units or total operating expenditures.

**2.** If we determine, whether by audit of your books and records or otherwise, that you are conducting operations not scheduled on this policy, we may add the appropriate classifications and compute the rates and premiums in accordance with our rules and rates in effect on the inception date of this policy, unless coverage has been restricted to "designated operations".

**3. Premium Bases.**

The premium bases are defined in accordance with our rules and the following additional definitions:

  **a. Payroll** (premium basis symbol **p**): Remuneration paid to "employees", "casual laborers", "temporary workers", day laborers, statutory workers, seasonal workers or "leased workers", including but not limited to:

  **(1)** Money or substitutes for money; commissions; bonuses; overtime; payments to statutory insurance or pension plans; profit sharing or incentive plans; pay for holidays, vacation or sickness; and fees paid to employment agencies for temporary personnel provided to you.

  **(2)** If your operations consist of a number of separate operations classified individually in the Declarations, the payroll will be allocated to each classification where you have maintained records for each separate operation. Any such operation for which separate records are **not** maintained by you will be assigned to the highest rated classification.

  **(3)** For premium computation purposes, the payroll of executive officers, individual insureds and co-partners is subject to a minimum annual payroll per person of:

  |  |
  |---|
  | $ |

  (If no entry is made, the minimum payroll as established by our rating rules will apply.)

  The rates apply per $1,000 of Payroll.

  **b. Admissions** (premium basis symbol **m**): The total number of persons, other than your "employees", admitted to the insured event or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

  The rates apply per 1,000 Admissions.

    **c.** **Gross Sales** (premium basis symbol **s**):  The gross amount charged by you, your concessionaires or by others trading under your name for:

        **(1)** All goods or products, sold or distributed;

        **(2)** Operations performed during the policy period; and

        **(3)** Rentals; or

        **(4)** Dues or fees.

    The rates apply per $1,000 of Gross Sales.

    **d.** **"Total Cost"** (premium basis symbol **c**) means the total cost of all work let or sublet in connection with each specific project including:

        **(1)** The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work including the cost of finished equipment installed whether or not furnished by the contractor, or subcontractor, or by you; and

        **(2)** All fees, bonuses or commissions made, paid or due.

    The rates apply per $1,000 of Total Cost.

    **e.** **Area** (premium basis symbol **a**):  The total number of square feet of floor space at the insured premises.

    The rates apply per 1,000 square feet of Area.

    **f.** **Each** (premium basis symbol **t**):  This basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the Declarations, such as "per person".

    The rates apply per each unit of exposure.

    **g.** **Units** (premium basis symbol **u**):  A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

    The rates apply per Unit.

    **h.** **Total Operating Expenditures** (premium basis symbol **o**):  Total expenditures (including grants, entitlements and shared revenue) without regard to source of revenue during the policy period including accounts payable.

    The rates apply per $1,000 of Total Operating Expenditures.

**4.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.  Failure to supply such records upon request will be deemed a breach of condition and subject this policy, and may subject any in force policy of yours, to cancellation for breach of conditions.

**5.** We reserve the right to examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**6.** Premium shown in this Coverage Part as advance premium is a minimum and deposit premium. Advance premium includes any payments identified as premium paid prior to policy expiration.  At the close of each audit period, we will compute the earned premium for that period.  Audit premium is due and payable upon notice to the first Named Insured.  Failure to pay the audit premium due will be deemed a breach of contract and subject this policy, and may subject any in force policy of yours, to cancellation for non-payment of premium.

    **a.** If the actual earned premium generated as a result of an audit for the policy period is less than the advance premium, such advance premium is the minimum premium for the policy period indicated and is not subject to adjustment.

    **b.** If the actual earned premium generated as a result of an audit for the policy period is greater than the advance premium, then a final premium adjustment endorsement will be issued. The additional premium amount shown on the final premium adjustment endorsement is due and payable to us upon notice to the first Named Insured.

**7.** **Estimated Annual Audit Procedure**:

If, after three documented attempts, we are unable to examine your books and records to obtain the information necessary to complete the audit, we may implement our estimated audit procedure as outlined below:

    **a.** An Estimated Audit Endorsement will be issued reflecting a fifty percent (50%) increase in your reported premium basis.  This increase is an estimate based on information we have on file, or your business operations.

    **b.** The Estimated Audit Endorsement will include a copy of the Unproductive Audit Report that outlines the documented attempts made to collect the required information.

    **c.** If you agree with the Estimated Audit Endorsement, you must remit payment for the full amount of the estimated audit; or

    **d.** If you dispute the Estimated Audit Endorsement, you must provide the requested audit information so we can calculate the proper earned premium developed for the policy period.

**8.** **Cancellation Audit Procedure.**

    **a.** If the policy is canceled prior to the expiration date the first Named Insured retains the unearned premium; we will retain the earned premium developed by:

       **(1)** Multiplying the advance premium by the applicable pro-rata factor, short-rate factor, or minimum earned premium percentage; or

       **(2)** An audit of your books and records for the period the policy was in force,

       whichever is greater.

    **b.** If the actual earned premium generated as a result of an audit is greater than the advance premium paid at issuance, then a final premium adjustment endorsement will be issued.  The additional premium amount shown on the final premium adjustment endorsement is due and payable to us upon notice to the first Named Insured.

**B.** The following definitions are **added** to the **Definitions** section:

**1.** "Casual laborers" are persons who provide services that are performed in the course of the employing unit's trade or business regardless of the amount of remuneration received or the length of time the services are provided.

**2.** "Designated operations" means only those operations performed by any insured that are described on the Common Policy Declarations, the General Liability Coverage Part Declarations, or the endorsements or supplements of this insurance.

All other terms and conditions of this policy remain unchanged.

POLICY NUMBER: NN687620                                    **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE
## (Including Allocated Loss Adjustment Expense)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount And Basis Of Deductible | | |
|---|---|---|---|
| | **PER CLAIM** | **PER OCCURRENCE** | **PER ITEM** |
| Bodily Injury Liability | $ | - OR - $ | Not Applicable |
| - OR - | | | |
| Property Damage Liability | $ | - OR - $ | - OR - $ |
| - OR - | | | |
| Bodily Injury Liability and Property Damage Liability Combined | $ 500 | - OR - $ | Not Applicable |

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim, a per "occurrence" or per item basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule. The deductible amount stated in the Schedule applies as follows:

   **1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule is on a per claim basis, that deductible applies as follows:

      **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

      **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

      **c.** Under Bodily Injury and Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

         **(1)** "Bodily injury";

         **(2)** "Property damage"; or

         **(3)** "Bodily injury" and "property damage" combined

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services, loss of support or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule is on a per "occurrence" basis, that deductible amount applies as follows:

   **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   **b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   **c.** Under Bodily Injury and Property Damage Liability Coverage Combined, to all damages because of:

      **(1)** "Bodily injury";

      **(2)** "Property damage"; or

      **(3)** "Bodily injury" and "property damage" combined

   as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

3. **PER ITEM BASIS.** If the deductible amount indicated in the Schedule is on a per item basis, that deductible amount applies under Property Damage Liability Coverage, to each item damaged because of "property damage" sustained by one person or organization as the result of any one "occurrence".

**C.** The deductible amount stated in the Schedule applies to loss, legal expense, and our "Allocated Loss Adjustment Expense" incurred, whether or not payment is made to the claimant, compromise settlement is reached or the claim is denied.

**D.** The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suits" seeking those damages; and

2. Your duties in the event of an "occurrence", claim or "suit"

apply irrespective of the application of the deductible amount.

**E.** We may, at our sole election and option, either:

1. Pay any part or all of the deductible amount to effect settlement of any claim or "suit" and upon notification of the action taken, you will promptly reimburse us for such part of the deductible amount as has been paid by us; or

2. Upon our receipt of notice of any claim or at any time thereafter, request you to pay and deposit with us all or any part of the deductible amount, to be held and applied according to the terms of this policy.

**F.** The following is **added** to the **Definitions** section:

"Allocated Loss Adjustment Expense" will include all costs and expenses incurred by us in investigating and adjusting any loss, with the exception of salary and overhead.

All other terms and conditions of this policy remain unchanged.

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **c. Liquor Liability** under Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

**c.  Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

**(1)** Are an owner or lessor of premises used for activities described in **(2), (3)** or **(4)** below whether such activities are performed with or without your knowledge;

**(2)** Manufacture, sell or distribute alcoholic beverages;

**(3)** Serve or furnish alcoholic beverages for a charge where the activity:

**(a)**  Requires a license; and

**(b)**  Is for the purpose of financial gain or livelihood; or

**(4)** Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

All other terms and conditions of this policy remain unchanged.

S038 (07/09)          Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is **added** to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability** and **Coverage C - Medical Payments**:

This insurance does not apply to:

**1.** "Bodily injury", "property damage", "personal and advertising injury", medical payments or "reduction in value" related to the actual, alleged, or threatened presence of, or exposure to "asbestos" in any form, or to harmful substances emanating from "asbestos".  This includes ingestion, inhalation, absorption, contact with, existence or presence of, or exposure to "asbestos".  Such injury from or exposure to "asbestos" also includes, but is not limited to:

   **a.** The existence, installation, storage, handling or transportation of "asbestos";

   **b.** The removal, abatement or containment of "asbestos" from any structures, materials, goods, products, or manufacturing process;

   **c.** The disposal of "asbestos";

   **d.** Any structures, manufacturing processes, or products containing "asbestos";

   **e.** Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage; or

   **f.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above.

**2.** Any loss, cost or expense, including, but not limited to payment for investigation or defense, fines, penalties and other costs or expenses, arising out of any:

   **a.** Claim, "suit", demand, judgment, obligation, order, request, settlement, or requirement by or on behalf of any authority, governmental or otherwise, that any insured or any other person or entity test for, monitor, clean up, remove, contain, mitigate, treat, neutralize, remediate, or dispose of, or in any way respond to, or assess the actual or alleged effects of "asbestos"; or

   **b.** Claim, "suit", demand, judgment, obligation, request, or settlement due to any actual, alleged, or threatened injury or damage from "asbestos" or testing for, monitoring, cleaning up, removing, containing, mitigating, treating, neutralizing, remediating, or disposing of, or in any way responding to or assessing the actual or alleged effects of, "asbestos" by any insured or by any other person or entity; or

   **c.** Claim, "suit", demand, judgment, obligation, or request to investigate which would not have occurred, in whole or in part, but for the actual or alleged presence of or exposure to "asbestos".

This exclusion applies regardless of who manufactured, produced, installed, used, owned, sold, distributed, handled, stored or controlled the "asbestos".

**B.** The following definitions are added to the **Definitions** section:

**1.** "Asbestos" means any type or form of asbestos, asbestos fibers, asbestos products, or asbestos materials, including any products, goods, or materials containing asbestos or asbestos fibers, products or materials and any gases, vapors, scents or by-products produced or released by asbestos.

**2.** "Reduction in value" means any claim, demand or "suit" that alleges diminution, impairment or devaluation of tangible property.

All other terms and conditions of this policy remain unchanged.

S261 (07/09)         Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## NAUTILUS INSURANCE COMPANY

PA

POLICY NUMBER: NN687620

ENDORSEMENT # 1

Named Insured: Marquis & Co., LLC t/a HipCityVeg HCV 121
Marquis HCV Holdings, LLC

Agency # 3770100

PENNOCK INSURANCE, INC.
2 CHRISTY DRIVE STE 100
Chadds Ford,PA 19317

Endorsement Effective Date: 08/25/2016

## GENERAL CHANGE ENDORSEMENT

IT IS HERBY UNDERSTOOD AND AGREED THAT THE MAILING
ADDRESS IS AMENDED TO READ AS FOLLOWS:

1500 WALNUT STREET
SUITE 602
PHILADELPHIA, PA 19102

NO CHANGE IN PERMIUM

ALL OTHER TERMS AND CONDIIONS REMAIN UNCHANGED

Tax & Fee Schedule

$

PREMIUM: ☒ None  ☐ AP  ☐ RP  $      0.00

TOTAL TAXES & FEES $      0.00

TOTAL PREMIUM DUE $      0.00

All other terms and conditions remain unchanged.

_____

Authorized Representative

08/26/16     LMUL          Date Issued: 08/26/16

S901  (07/13)         Includes copyrighted material of Insurance Services Office, Inc., with its permission.